United States Court of Appeals,

Eleventh Circuit.

No. 94-3065.

ALABAMA POWER COMPANY, Georgia Power Company, Gulf Power Company, Mississippi Power Company, Savannah Electric and Power Company, Petitioners,

v.

OCCUPATIONAL SAFETY & HEALTH ADMINISTRATION, United States Department of Labor, Respondents,

International Brotherhood of Electrical Workers, AFL-CIO, Utility Workers of America, AFL-CIO, National Rural Electric Cooperative Assoc., Intervenors.

July 26, 1996.

Petition for Review of an Order of the Occupational Safety and Health Review Commission.

Before CARNES, Circuit Judge, and FAY and GIBSON[*], Senior Circuit Judges.

FAY, Senior Circuit Judge:

This action arises from the passage of a standard by the Occupational Safety and Health Administration (OSHA) governing Electric Power Generation, Transmission and Distribution; Electrical Protective Equipment. 59 Fed.Reg. 4320-4476 (1994) (codified at 29 C.F.R. § 1910.269) (the "Standard"). Specifically, petitioners challenge a single provision of the Standard, namely 29 C.F.R. § 1910.269(1)(6)(iii) (the "apparel provision") which addresses clothing requirements for those employees who may be exposed to the hazards of flames or electric arcs. We find that OSHA provided adequate notice and opportunity for comment with regard to the apparel provision and that the inclusion of the

[*]Honorable John R. Gibson, Senior U.S. Circuit Judge for the Eighth Circuit, sitting by designation.

apparel provision within the text of the Standard was supported by substantial evidence. Accordingly, the petition for review is DENIED.

## I. BACKGROUND

The Standard at issue arose as a result of a cooperative initiative between the Edison Electric Institute (EEI), a major trade association of investor-owned electric utilities, and the International Brotherhood of Electrical Workers (IBEW), a major union representing electric utility workers. 59 Fed.Reg. 4322. EEI and IBEW presented OSHA with their versions of a draft standard providing for comprehensive regulation of the electric utility industry. *Id.* OSHA utilized the drafts submitted by EEI and IBEW as one of the bases for the development of a proposed standard regulating the industry. *Id.* On January 31, 1989, OSHA published a draft of the Standard with a Notice of Proposed Rulemaking. 54 Fed.Reg. 4974.

The initial draft standard did not contain a provision regarding apparel. However, the January 31, 1989 notice contained a statement that OSHA was requesting comments on the desirability of adopting requirements regarding the types of clothing fabrics worn by electric utility workers due to the fact that certain fabrics are easily ignited and can cause severe burns. 54 Fed.Reg. 4990. Further, OSHA requested comments on the costs and benefits of any suggested provisions regarding apparel. *Id.*

Interested parties were given until May 1, 1989, and then again until June 1, 1989 to comment on the proposed Standard. On July 20, 1989, OSHA issued a Notice of Hearing on the Standard. 54

Fed.Reg. 30401. In it OSHA noted that it was considering a prohibition of any clothing fabrics that would substantially increase the severity of an employee's injury from arcing electrical equipment, and requested additional comment on flammable fabrics. *Id.* at 30404. Eleven days of public hearings were held and the submission of post-hearing briefs and comments were permitted until March 1, 1991.

On January 31, 1994, OSHA issued the final Standard. The apparel provision provides in part:

> The employer shall ensure that each employee who is exposed to the hazards of flames or electric arcs does not wear clothing that, when exposed to flames or electric arcs, could increase the extent of injury that would be sustained by the employee.

59 Fed.Reg. 4445. A note further provides that acetate, nylon, polyester, and rayon, either alone or in blends, are prohibited unless the employer can demonstrate that the fabric has either been treated to withstand possible conditions or worn in a manner which eliminates the hazard involved. *Id.*

In its preamble explanation of the Standard's apparel provision, OSHA noted that "[n]atural fabrics, such as 100 percent cotton or wool, and synthetic materials that are flame resistant or flame retardant are acceptable under the final rule." 59 Fed.Reg. 4389. OSHA also acknowledged that a videotape produced by the Duke Power Company in Charlotte, NC, which reported on tests performed on various clothing materials, was a predominant basis upon which the apparel provision was promulgated. Specifically, OSHA stated that "[t]he requirement is intended to prohibit the types of fabrics shown in the [video] to be expected to cause more severe injuries than would otherwise be anticipated." *Id.*

On June 30, 1994, in response to certain industry representative's questions concerning the preamble's clarity with regard to those natural fabrics which would be deemed acceptable under the apparel provision, OSHA published what it considered to be a "Correction of the Preamble", which was intended to clarify the January 31 preamble. This "correction" provides, inter alia:

> Natural fabrics, such as 100 percent cotton or wool, are acceptable under the final rule, provided they are of such weight and construction as not to ignite under the conditions to which an employee might be exposed. (For example, cotton fabrics of 11 ounces or [more] generally will not ignite when exposed to an arc the energy of which is approximated by a 3800-ampere, 12-inch arc lasting for 10 cycles ...). Synthetic materials that are flame resistant or flame retardant are acceptable under the final rule.

59 Fed.Reg. 33661. In its explanation of the "correction" OSHA noted that the clarification did not revise either the January 31, 1994 rule with regard to apparel, nor the note following it which specified the prohibited fabrics. 59 Fed.Reg. 33659. Shortly thereafter, with regard to the apparel provision, petitioners filed a Petition for Review before this court.

## II. STANDARD OF REVIEW

The burden of proving the validity of an occupational safety and health standard rests with OSHA. *Industrial Union Dept., AFL-CIO v. American Petroleum Inst.,* 448 U.S. 607, 653, 100 S.Ct. 2844, 2869-70, 65 L.Ed.2d 1010 (1980); *AFL-CIO v. OSHA,* 965 F.2d 962, 973 (11th Cir.1992). Determinations made by OSHA shall be conclusive if supported by substantial evidence based on the entire record. 29 U.S.C. 655(f). " "Substantial evidence' as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *AFL-CIO v. OSHA,* 965 F.2d at 970 (quoting

*American Textile Mfrs. Inst., Inc. v. Donovan,* 452 U.S. 490, 522, 101 S.Ct. 2478, 2497, 69 L.Ed.2d 185 (1981)). A "harder look' at OSHA's action is required than if we were reviewing it under the arbitrary and capricious standard which is the more deferential standard applicable to agencies regulated by the Administrative Procedure Act. *AFL-CIO v. OSHA,* 965 F.2d at 970. In considering the record as a whole, reviewing courts must consider both supportive and countervailing evidence. *Id.* Nevertheless, the court "must uphold [OSHA's] "choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it *de novo.*' " *AFL-CIO v. OSHA,* 965 F.2d at 970 (quoting *AFL-CIO v. Marshall,* 617 F.2d 636, 649, n. 44 (D.C.Cir.1979). "OSHA's policy decisions must be: (1) consistent with the language of and purpose of the OSH Act, and (2) reasonable under the rulemaking record." *AFL-CIO v. OSHA,* 965 F.2d at 970. In addition, the " "validity of an agency's determination must be judged on the basis of the agency's stated reasons for making that determination.' " *AFL-CIO v. OSHA,* 965 F.2d at 970. (quoting *AFL-CIO v. American Petroleum Inst.,* 448 U.S. at 631, n. 31, 100 S.Ct. at 2858, n. 31).

## III. ANALYSIS

The Occupational Safety and Health Act of 1970, 29 U.S.C. §§ 651-678, was enacted in order "to assure so far as possible every working man and woman in the Nation safe and healthful work conditions ..." 29 U.S.C. § 651(b). To achieve this purpose, the Secretary of Labor (OSHA) is authorized to "promulgate, modify, or revoke any occupational safety or health standard.... and shall

afford interested persons a period of thirty days after publication to submit written data or comments."  29 U.S.C. § 655(b); *see AFL-CIO v. OSHA,* 965 F.2d at 968-969.

A. *Notice and Opportunity to Comment*

Petitioners challenge the Standard at issue on both procedural and substantive grounds.[1]  Petitioners first argue that OSHA failed to provide notice and an adequate opportunity for comment with regard to the June 30, 1994 "revision" of the apparel provision.[2]  Apparently, Petitioners contend that the apparel provision, as originally issued, permitted all natural fabrics, regardless of weight, whereas the "correction" was in effect a "modification" because it did not permit all natural fabrics, but rather specified only certain weights of natural fabrics it deemed acceptable.

As previously noted, OSHA is required to provide the public an

---

[1]The industry petitioners include Alabama Power Company, Georgia Power Company, Gulf Power Company, Mississippi Power Company, and Savannah Electric and Power Company.

[2]Petitioners also contend that the Notice of Proposed Rulemaking and the Notice of Hearing (January 31, 1989, and July 20, 1989 respectively) were not sufficient to put them on notice that OSHA was even contemplating the regulation of natural fabrics.  We disagree.  The January 31, 1989 notice clearly requested comments regarding whether it should adopt requirements with regard to clothing fabrics that are easily ignited.  54 Fed.Reg. 4990.  In addition, the July 20, 1989 pre-hearing notice advised interested parties that OSHA was considering a prohibition on *any* clothing that could increase the severity of injury from electric arcs.  54 Fed.Reg. 30404 (emphasis added). These notices were more than adequate to apprise petitioners of OSHA's intent to possibly regulate *any* fabric that could exacerbate injuries, including synthetics and natural fabrics. Nothing that was said in these notices can reasonably be interpreted to suggest that only synthetic fabrics were concerned.  For these reasons, we find that petitioners argument is without merit.

opportunity to comment with regard to standards that are modified. 29 U.S.C. § 655(b)(2). Nevertheless, "[w]e do not read § 655(b)(2) to invalidate a clarification of this sort, issued relatively soon after the issuance of a standard." *International Union, UAW v. OSHA,* 938 F.2d 1310, 1325 (D.C.Cir.1991) (technical correction notice issued 13 months after final rule issued). In commenting on certain weights of natural fabric OSHA did not change the fact that natural fabrics are indeed acceptable under the Standard. Rather, it merely clarified that under certain conditions, heavyweight natural fabrics are necessary in order to fully protect those workers exposed to electric arcs.[3] OSHA unambiguously noted that "100 percent cotton or wool will be acceptable if its weight is appropriate for the flame and electric arc conditions to which an employee could be exposed." 59 Fed.Reg. 33659. The employer has discretion to determine whether or not 100 percent cotton or wool clothing is acceptable under the conditions to which a worker could be exposed.[4] *Id.* Such statements make it clear that natural

---

[3]Specifically, OSHA stated that cotton fabrics "of less than 11 ounces will not meet the performance criteria given in the Standard for employees exposed to conditions comparable to those in the Duke Power [video]." 59 Fed.Reg. 33659. Those conditions involved an 3800-ampere, approximately 12-inch arc which was 12 inches from the fabric and lasted for 10 cycles. *Id.* We find that this statement in no way eliminates the possible use of lightweight fabrics in conditions that are less severe than those in the Duke Power video. Furthermore, the video upon which OSHA primarily based this provision encourages the use of either flame resistant/flame retardant lightweight natural fabrics, or heavy weight natural fabrics, thus disposing of any argument that lightweight natural fabrics have been eliminated altogether from the list of acceptable fabrics.

[4]Petitioners erroneously and inappropriately contend that all electric utility workers, such as meter readers, would be required to wear only those fabrics deemed acceptable under the Standard. The apparel provision by definition is only applicable

fabrics are in no way prohibited altogether, but rather, that certain conditions to which a worker may be exposed call for either a heavyweight natural fabric, or a lightweight flame retardant natural fabric.

The final standard, correction included, "is consistent with the record evidence and would have constituted a logical outgrowth of the proposed [standard] if originally promulgated as corrected." Therefore, OSHA is exempt from the notice requirements applicable to standard modifications.

B. *Finding of Significant Risk*

Second, petitioners allege that OSHA has not demonstrated, by substantial evidence, a significant risk of material harm which is addressed by the June 30, 1994 "revision" of the apparel provision. Specifically, petitioners allege that OSHA's determination of the existence of a significant risk with regard to natural fabrics is contrary to the record evidence.

Before OSHA can issue a permanent standard pursuant to 29 U.S.C. 655(b) (1988) it must find, as a threshold matter, that a significant occupational health or safety risk exists. *AFL-CIO v. OSHA,* 965 F.2d at 972-73. This finding must be made in order to comply with the requirement that all OSHA standards must be "reasonably necessary or appropriate to provide safe or healthful employment and places of employment." 29 U.S.C. § 652(8).

---

to those electrical workers who are exposed to electrical arcs. Specifically, the provision encourages employers to ensure their employees wear such clothing "*if they will be exposed to the hazard of flame or electric arc.*" 59 Fed.Reg. 33659 (emphasis added). Residential meter readers clearly do not fall within this category.

OSHA's finding of a safety hazard with respect to synthetics, and natural fabrics under certain conditions, is based on the comments and submissions in the rulemaking record made by various electric utility industry representatives. Based on this information, OSHA found that a significant risk of harm exists for those workers exposed to electric arcs while wearing clothing made of easily ignited fabrics which can increase the extent of injury caused. What must be ascertained is whether OSHA's determination of the existence of a significant risk of harm is based on substantial evidence. *Texas Independent Ginners Ass'n. v. Marshall,* 630 F.2d 398, 406 (5th Cir.1980).[5]

Based on the record as a whole, it is our belief that OSHA has presented substantial evidence of a significant risk, thus justifying the inclusion of the "clarification" within the apparel provision. OSHA primarily relied on the Duke Power Videotape, which reported on previous tests performed on a variety of treated and untreated fabrics, and which showed a demonstration highlighting the alarming effects of exposure to electrical arcs while wearing synthetics.[6] We find that the video was powerful and substantial evidence that synthetics, as well as lightweight

---

[5]Decisions of the former Fifth Circuit handed down before October 1, 1981 are binding precedent in this circuit. *Bonner v. City of Prichard, Alabama,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc).

[6]The record reveals at least two major electric utility groups, the International Brotherhood of Electrical Workers (IBEW) and the American Society For Testing and Materials (ASTM), who endorse the Duke Power Video and claim that the data derived from the tests performed has been exceptionally useful and has provided accident prevention and life saving data that is of great importance to the industry.

natural fabrics, do not adequately protect workers from the burning and possible melting and sticking which can be caused by exposure to electrical arcs. Comments from some other industry representatives also suggest that because synthetics are dangerous, natural fabrics should be worn. All of this is consistent with OSHA's determination that while all untreated synthetics should be prohibited, natural fabrics are acceptable so long as they fall into one of two categories: 1) lightweight natural fabrics that have been treated and are flame resistant, and 2) heavy weight natural fabrics.

We find that the record contains substantial evidence supporting OSHA's determination that wearing synthetics and untreated lightweight natural fabrics poses a significant risk of harm to electric utility workers exposed to electric arcs.

C. *Reasonably Necessary or Appropriate Standard*

Third, petitioners contend that OSHA did not demonstrate, by substantial evidence, that the June 30, 1994 "revision" of the apparel provision is "reasonably necessary or appropriate." Specifically, petitioners contend that OSHA failed to consider the costs imposed by the provision.

The applicable test is dependant on the type of material regulated by a standard. OSHA standards regarding toxic materials or harmful physical agents must be standards which most adequately assure, "to the extent feasible, ... that no employee will suffer material impairment of health or functional capacity." 29 U.S.C. § 655(b)(5). "The Supreme Court has interpreted this language to require that the proposed standard be both technologically and

economically "feasible.' " *International Union,* 938 F.2d at 1313. Standards imposed under 29 U.S.C. § 655(b), which do not concern toxic materials or harmful physical agents, must be " "reasonably necessary or appropriate' to protect employee safety." *National Grain and Feed Association v. OSHA,* 866 F.2d 717, 733 (5th Cir.1989). In addition, "[t]he reasonably necessary or appropriate limitation requires that OSHA regulations must be reasonably essential or at least reasonably efficacious in reducing a significant risk of material harm." *Texas Independent Ginners,* 630 F.2d at 410. "Although the agency does not have to conduct an elaborate cost-benefit analysis, it does have to determine whether the benefits expected from the standard bear a reasonable relationship to the costs imposed by the standard." *American Petroleum Inst. v. OSHA,* 581 F.2d 493, 503 (5th Cir.1978) (citations omitted).

Regardless of whether the feasibility limitation or the reasonably necessary limitation applies to the instant case, we find that OSHA's findings and actions based on such fulfill both standards. In its costs analysis for the Standard, OSHA did not attribute any cost to the apparel provision because the provision itself does not require utility employers to supply work clothing to their employees. R-L-71 at pp. 4-16, 4-34, 4-49, and 4-72. Although the cost of compliance could therefore be passed on to the employees, we nevertheless find nothing in the record that leads us to believe that using heavyweight natural fabric clothing, or flame retardant treated clothing, would necessarily increase the cost at all. Indeed, although petitioners claim compliance with this

provision will impose "tremendous" costs upon employees, we find no evidence in the record which substantiates their claim. In analyzing the benefits of the Standard, OSHA concluded that compliance with the Standard will "significantly reduce the number of fatalities and injuries involving electrical contact, *flash burns,* and thermal burns," 59 Fed.Reg. 4431 (emphasis added), and is expected to prevent 61 fatalities and 1634 injuries annually. 59 Fed.Reg. 4430.

Although OSHA may not have done everything it could to be in literal compliance with either test annunciated above, we nevertheless find that OSHA's conclusions are supported by substantial evidence in the record. As Mr. Wallace Reed of W.H. Salisbury and Co. so aptly noted with regard to this provision: "any added measure of protection afforded is justified by the small difference in cost." R-3-57. In this case, as previously noted, our thorough search of the record reveals no evidence supporting petitioners' assumption that compliance will necessarily result in increased costs.[7]

D. *Stated Reasons for the Apparel Provision*

Fourth, petitioners challenge whether or not OSHA adequately explained its reasons for the June 30, 1994 "correction" of 29 C.F.R. § 1910.269(1)(6)(iii) (apparel provision).

Pursuant to 29 U.S.C. § 655(e), in promulgating any standard the Secretary of Labor must include a statement of the reasons for

---

[7]Because petitioners did not properly raise their objections during the rulemaking proceeding, we decline to address any argument that OSHA failed to consider the issue of heat stress with regard to this provision. *See Taft v. Alabama By-Products Corporation,* 733 F.2d 1518, 1523 (11th Cir.1984).

such action.  To that end, "the agency must pinpoint the factual evidence and the policy considerations upon which it relied." *AFL-CIO v. Marshall,* 617 F.2d 636, 651 (D.C.Cir.1979).

Our review of the record leads us to conclude that OSHA sufficiently articulated the factual evidence and policy considerations upon which it relied.  In its statement of reasons for its action, OSHA noted evidence which supported a finding that certain fabrics worn by electric utility workers exposed to electric arcs could actually increase the extent of injury caused by contact with arcs.  For instance, OSHA found that the testimony of Mr. James Ozello of the IBEW strongly rebutted the comment made that electric utility employees are rarely exposed to electric arcs.  Specifically, Mr. Ozello testified that with regard to accidents involving burns, "[i]f 65 of the employees who were involved in serious accidents had been wearing natural fiber clothing or flame retardant clothing, their accidents might not have been classified as serious accidents."[8]  59 Fed.Reg. 4388. OSHA also stated that in promulgating this provision it relied upon the Duke Power video submitted by the IBEW which "demonstrat[ed] the effects of different types of clothing upon exposure to electric arcs."  *Id.* at 4389.  In addition, other submissions to the record were cited by OSHA as evidence upon which it relied.

[8]Although Mr. Ozello's testimony appears to advocate the use of natural fiber clothing, in no way does that contradict the apparel provision at issue.  As previously mentioned, the provision does not prohibit the use of natural fabrics.  In the notice and explanation of the provision, OSHA places great emphasis on the Duke Power video which states that workers exposed to electrical arcs can wear lightweight flame retardant cotton in the summer and heavyweight cotton in the winter.

*See* 59 Fed.Reg. 4389. OSHA believed these submissions provided ample evidence of the fact that certain fabrics increase the extent of injuries caused by electrical arc exposure.

Consequently, OSHA's comments in the *Federal Register* are sufficient to comply with the requirement imposed by 29 U.S.C. § 655(e).

## IV. CONCLUSION

For these reasons, we uphold the apparel provision of the Standard at issue. Therefore, the petition for review is DENIED.