**STEEL JOIST INSTITUTE, Petitioner,**

**v.**

**OCCUPATIONAL SAFETY & HEALTH ADMINISTRATION and Secretary of Labor, Respondents.**

**Structural, Ornamental, Rigging & Reinforcing Steel Industry, Safety Advisory Committee, Intervenor.**

**No. 01–1184.**

United States Court of Appeals, District of Columbia Circuit.

Argued Feb. 20, 2002.

Decided May 7, 2002.

Jason P. Thomas argued the cause for the petitioner. Steven R. Valentine and Kenneth G. Lee were on brief.

Ronald J. Gottlieb, Attorney, United States Department of Labor, argued the cause for the respondents. Joseph M. Woodward, Associate Solicitor, United States Department of Labor, and Bruce Justh, Attorney, United States Department of Labor, were on brief.

David K. Moore, Steven John Fellman and William Francis Krebs entered appearances for the intervenor.

Before: HENDERSON, RANDOLPH and ROGERS, Circuit Judges.

Opinion for the court filed by Circuit Judge KAREN LeCRAFT HENDERSON.

Concurring opinion filed by Circuit Judge ROGERS.

KAREN LeCRAFT HENDERSON, Circuit Judge:

On August 13, 1998 the Occupational Safety and Health Administration (OSHA) proposed revised "Safety Standards for Steel Erection" based on a consensus document submitted by a rulemaking advisory committee in a negotiated rulemaking. 63 Fed.Reg. 43,452 (1998). After a public hearing, two comment periods and a public consultation meeting, OSHA issued its final rule on January 18, 2001. *See* 66 Fed.Reg. 5196 (2001). The Steel Joist Institute (Institute) asks the court to invalidate three provisions of the final rule's safety standard for open web steel joists. The three provisions are codified at 29 C.F.R. § 1926.757(a)(1)(iii), 29 C.F.R. § 1926.757(a)(3) and 29 C.F.R. § 1926.757(a)(8). Because the Institute presented argument against section 1926.757(a)(3) for the first time in its reply brief, its challenge to this provision is waived. *See Benkelman Telephone Co. v. FCC,* 220 F.3d 601, 607 n. 10 (D.C.Cir. 2000) (argument found "waived because . . . raised for the first time in the petitioners' reply brief") (citing *Grant v. United States Air Force,* 197 F.3d 539, 543 (D.C.Cir.1999) (citing *Fraternal Order of Police v. United States,* 173 F.3d 898, 902–03 (D.C.Cir.1999))). As explained below, we reject the Institute's objections to section 1926.757(a)(1)(iii) and section 1926.757(a)(8), which require "field bolting" of steel joists, because they are authorized by section 6(b) of the Occupational Safety and Health Act of 1970, 29 U.S.C. § 655(b), (Act) and they are supported by substantial evidence.

Each of the two challenged provisions requires that joists be field bolted temporarily during steel erection to protect employees working on and around the joists until the joists are welded permanently in place. Specifically, they provide:

(1) Except as provided in paragraph (a)(2) of this section,[1] where steel joists are used and columns are not framed in at least two directions with solid web structural steel members, a steel joist shall be field-bolted at the column to provide lateral stability to the column during erection. For the installation of this joist:

. . .

(iii) Hoisting cables shall not be released until the seat at each end of the steel joist is field-bolted, and each end

---

1. Section (a)(2) authorizes an "alternate means of stabilizing joists" to be used "[w]here constructibility does not allow a steel joist to be installed at the column." 29 C.F.R. § 1926.757(a)(2).

of the bottom chord is restrained by the column stabilizer plate.

. . .

(8) Field-bolted joists.

(i) Except for steel joists that have been preassembled into panels, connections of individual steel joists to steel structures in bays of 40 feet (12.2 m) or more shall be fabricated to allow for field bolting during erection.

(ii) These connections shall be field-bolted unless constructibility does not allow.

29 C.F.R. § 1926.757(a)(1)(iii), (a)(8) (footnote added). The Institute challenges the provisions on two grounds.

■ First, the Institute contends that the provisions constitute an *ultra vires* attempt to regulate joist design and consequently the off-site joist manufacturers. We disagree. It is true that the Act authorizes OSHA to regulate only the employer's conduct at the worksite. *See* 29 U.S.C. § 653(a) ("This chapter shall apply with respect to employment performed in a workplace . . . ."); *cf. Frank Diehl Farms v. Secretary of Labor,* 696 F.2d 1325, 1332 (11th Cir.1983) (§ 653(a) does not authorize OSHA to regulate migrant worker's living conditions); but the challenged provisions do not exceed OSHA's statutory authority. Notwithstanding the infelicitous phrasing of section 1926.757(a)(8), which purports to direct how joists "shall be fabricated," OSHA has made it clear that the challenged provisions are not enforceable, or intended to be enforced, against joist manufacturers.[2] Regulation 1926.750 expressly declares that "[t]his subpart sets forth requirements to protect employees from the hazards *associated with steel erection activities,*" 29 C.F.R.

§ 1926.750(a) (emphasis added), and includes several examples of what constitutes such activities, *see id.* § 1926.750(b)(1) ("Steel erection activities include hoisting, laying out, placing, connecting, welding, burning, guying, bracing, bolting, plumbing and rigging structural steel, steel joists and metal buildings; installing metal decking, curtain walls, window walls, siding systems, miscellaneous metals, ornamental iron and similar materials; and moving point-to-point while performing these activities."); *see also id.* § 1926.750(b)(2) (enumerating "activities [that] are covered by [the] subpart when they occur during and are a part of steel erection activities"). Further, the final rule carefully limns the scope of the standard, 66 Fed.Reg. at 5200–02, expressly stating that employers in "the fabricated structural metal industry . . ., which produces iron and steel for structural purposes such as the construction of bridges and buildings, . . . are *not* affected employers under the . . . Act," *id.* at 5261 (emphasis added). *See also* 29 C.F.R. § 5.2(i) (defining "building or work generally [to] include construction activity as distinguished from manufacturing, furnishing of materials, or servicing and maintenance work"); 29 C.F.R. § 1910.12 (safety standards "shall apply, according to the provisions thereof, to every employment and place of employment of every employee engaged in construction work" and defining "construction work" as "work for construction, alteration, and/or repair, including painting and decorating"). Insofar as the challenged provisions regulate the design of the joists used by the steel joist erector, OSHA's authority to regulate the safety characteristics of tools and materials used at a worksite is well established. *See, e.g.,* 29 C.F.R. § 1926.1053 (setting

---

**2.** OSHA could have accomplished the same result (without the objectionable language) had it promulgated only subsection (a)(8)(ii), changing "[t]hese connections" to "connections of individual steel joists to steel structures in bays of 40 feet (12.2 m) or more."

requirements for worksite ladders); *id.* § 1926.550 (setting requirements for worksite cranes and derricks); *Alabama Power Co. v. OSHA,* 89 F.3d 740 (11th Cir.1996) (upholding standard provision "address[ing] clothing requirements for those employees who may be exposed to the hazards of flames or electric arcs"). We therefore reject the Institute's *ultra vires* argument.

■ Next, the Institute asserts that neither section 1926.757(a)(1)(iii) nor section 1926.757(a)(8) is supported by substantial record evidence. *See* 29 U.S.C. § 655(f) ("The determinations of the Secretary shall be conclusive if supported by substantial evidence in the record considered as a whole.").[3] We disagree with this contention as well. OSHA acknowledges, as the Institute asserts, that there is no record evidence of injury or death attributable to joist instability. *See* 66 Fed.Reg. at 5232 ("OSHA's accident data do not cast any light on whether welding of joist ends is a hazard."). OSHA responds, however, that the "data in many cases do not provide enough detail as to the role of welding in the reported accidents involving joists," *id.*, and further notes, correctly, that the Act does not require specific evidence of past injury to justify standards to prevent future injury from a likely hazard. *See Whirlpool Corp. v. Marshall,* 445 U.S. 1, 12, 100 S.Ct. 883, 890, 63 L.Ed.2d 154 (1980) ("[T]he legislation's remedial orientation is prophylactic in nature. The Act does not wait for an employee to die or become injured. It authorizes the promul-

gation of health and safety standards and the issuance of citations in the hope that these will act to prevent deaths or injuries from ever occurring.") (citations omitted). As OSHA points out, unattached joists constitute such a hazard because they can be displaced "by wind or construction activity, by the movement of employees, by trailing welding leads, by accidental impact against the supporting structure by a crane or other equipment, or by harmonic motion, or vibration." 66 Fed.Reg. at 5236.

Ultimately the Institute does not deny that unsecured joists pose a hazard and has in fact proposed, in order to obviate it, that joists be temporarily "tack welded" in place until a permanent weld is applied. *See* 66 Fed.Reg. at 5233 ("OSHA notes, however, that the Steel Joist Institute Technical Digest No. 9 currently recommends that 'Immediately after each subsequent joist is set in its proper position, one side of the joist bearing seat on each end of the joist should be tack welded.'"). The Institute maintains that tack welding is safer than bolting because bolting subjects a worker to the hazard of an unstable joist twice, once when he bolts it initially and again when he permanently welds it. As OSHA pointed out below, however, tack welding likewise requires two separate trips, one for the temporary tack weld and a second for the permanent weld. *See* 66 Fed.Reg. at 5233. Further, OSHA offers two persuasive reasons why bolting is preferable to tack welding, namely that (1) "joists can roll and pop welds due to the

---

**3.** The objection here to section 1926.757(a)(1)(iii) is surprising because below the Institute expressly approved subsection (a)(1) generally as a required safety measure: "The requirement for joist and girders at columns to be field-bolted is a carryover from the previous standard and has long been an effective method for preventing adjacent parallel beams from opening up. Providing a

bolted connection for joists at columns is a very necessary safety issue and has been supported by the joist industry for years." Steel Joist Institute Comments on Proposed Rule for Safety Standards for Steel Erection, Docket No. S–775 (filed Nov. 12, 1998) at 28. The Institute's comments did not single out subsection (a)(1)(iii) for objection or revision.

movement of a worker on the joist or the stresses caused by removing the sweep, which could cause a collapse" and (2) welding has "unique hazards," including "impairment of the vision and balance of an employee working at elevation while wearing a welding hood." 66 Fed.Reg. at 5232. The likelihood of these hazards supports the field-bolting requirements imposed in section 1926.757(a)(1)(iii) and section 1926.757(a)(8).

For the preceding reasons, the petition for review is

*Denied.*

ROGERS, Circuit Judge, concurring:

The Steel Joist Institute ("Institute") begins its "Statement of the Case" in its brief as follows:

The Steel Joist Institute challenges the portions of the Safety Standards for Steel Erection that mandate the design of steel joints. The regulations are to be codified at 29 C.F.R. [§] 1926.757(a)(1)(iii) ...; section 757(a)(3) ...; and section 757(a)(8) ... (collectively, "the Regulations").

Petitioner's Br. at 1. In presenting a summary of its argument, the Institute closely repeats the first sentence of its Statement of the Case and adds:

The regulations should be set aside for two reasons. First, OSHA does not have statutory authority to specify the design of buildings' structural elements. Second, the regulations are not supported by substantial evidence.

*Id.* at 6. The Institute then contends that in attempting to improve the safety of steel erection, OSHA has "reached back to assert its statutory authority over the design of the product being assembled by steel erectors" but that "the Act does not contemplate OSHA designing steel joists" "because Congress has clearly expressed

its intent that OSHA's jurisdiction only extends as far as working conditions at the place of employment." *Id.* Finally, the Institute argues that sections 1926.757(a)(1) and (8) are not supported by substantial evidence in the record. *Id.* at 7.

Accordingly, there is no basis on which the court can conclude that the Institute has waived its challenge to OSHA's statutory authority to promulgate section 1926.757(a)(3). *See* Opinion at 2. The Institute raised two issues on appeal: (1) whether OSHA exceeded its authority in promulgating provisions of a regulation that in its view dictate the design of steel joists, and (2) whether there is substantial evidence in the record to support sections (a)(1) and (a)(8) of the regulation. *See id.* at xiii. Because these are separately presented issues, there is no basis on which to conclude that the Institute waived its general challenge to OSHA's statutory authority specifically as to section 1926.757(a)(3) while preserving the same statutory challenge as to sections (a)(1) and (a)(8).

On the merits, the Institute's challenge to OSHA's authority to promulgate these three provisions of the regulation is meritless. The court's analysis of OSHA's authority is no less applicable to section 1926.757(a)(3) than to sections 1926.757(a)(1) and (8). In holding that OSHA did not exceed its congressionally delegated authority in promulgating sections 1926.757(a)(1) and (8), the court makes three relevant observations: (1) OSHA's authority to regulate safety characteristics of tools and materials used at a worksite is well established; (2) the final rule expressly exempts employers in the fabricated structural metal industry from the standard; and (3) "[n]otwithstanding the infelicitous phrasing of section 1926.757(a)(8), which purports to direct how joists 'shall be fabricated,' OSHA has

made it clear that the challenged provisions are not enforceable, or intended to be enforced, against joist manufacturers." Opinion at 3–5. Similar to the phraseology of section 1926.757(a)(8), section 1926.757(a)(3) provides that "the joist shall be *designed* with sufficient strength," but has as its purpose "to allow one employee to release the hoisting cable without the need for erection bridging." 29 C.F.R. § 1926.757(a)(3) (emphasis added). In other words, the activity being regulated by OSHA under section 1926.757(a)(3) is, again, at the work site, and not in the manufacturing facility. Nor is there any suggestion that the language or effect of section 1926.757(a)(3) regarding "design[ ]" is different in any material way from section 1926.757(a)(8)'s statement about "fabricat[ion]." Under the circumstances, there is no basis to hold that OSHA lacked authority to promulgate section 1926.757(a)(3) much less sections 1926.757(a)(1) and (8).

Accordingly, because there was substantial evidence in the record considered as a whole to support sections 1926.757(a)(1) and (8), *see* Opinion at 5–6, I concur in denying the petition.