**DR PEPPER/SEVEN–UP COMPANIES, INC., et al., Plaintiffs–Appellants,**

v.

**FEDERAL TRADE COMMISSION, Defendant–Appellee.**

No. 92–5308.

United States Court of Appeals, District of Columbia Circuit.

Argued March 12, 1993.

Decided April 16, 1993.

---

Philip D. Bartz, with whom Micki M. Chen, Washington, DC, Peter E. Greene, New York City, and Gary A. MacDonald were on the brief, for appellants. Alan Kriegel, Washington, DC, also entered an appearance for appellant Harold A. Honickman.

Jeffrey T. Sprung, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty. at the time the brief was filed, John D. Bates, and R. Craig Lawrence, Asst. U.S. Attys., and James M. Spears, Gen. Counsel, Jay C. Shaffer, Deputy Gen. Counsel, Ernest J. Isenstadt, Asst. Gen. Counsel, and Melvin H. Orlans, Atty., F.T.C., Washington, DC, were on the brief, for appellee.

W. Foster Wollen, New York City, entered an appearance for intervenor Cadbury Beverages, Inc.

Before: EDWARDS, SENTELLE, and HENDERSON, Circuit Judges.

Opinion for the court filed by Circuit Judge EDWARDS.

HARRY T. EDWARDS, Circuit Judge:

This case involves a suit brought by the Dr. Pepper/Seven–Up Companies, Inc., *et al.* ("DPSU") challenging a decision by the Federal Trade Commission ("FTC" or "the Commission"). In the decision at issue, the FTC denied an application by Harold Honickman ("Honickman") for prior approval to acquire Brooklyn Bottling Company. The District Court granted summary judgment in favor of the FTC, *see Dr Pepper/Seven–Up Cos. v. FTC*, 798 F.Supp. 762 (D.D.C.1992), and DPSU now seeks review.

Upon consideration of the record before us, we reject DPSU's claim that the "prior-approval" procedures followed by the FTC are legally infirm. We also find that the FTC was fully justified in concluding that Honickman failed to carry the prescribed burden of proof in his application for prior approval to acquire Brooklyn Bottling Company. However, because the Commission did not provide a reasoned explanation for its conclusion that the proposed transaction should not be approved pursuant to the "failing company" doctrine, we reverse in part and remand the case for further proceedings.

## I. BACKGROUND

The underlying facts of this case are recited in detail in the opinion of the District Court. *See id.* at 764–68. Therefore, we will not repeat this background, save as necessary to highlight matters of significance for this appeal.

Briefly, this case involves a challenge to the FTC's denial of Honickman's application for prior approval to acquire Brooklyn Bottling. The application was made pursuant to a 1991 consent agreement under which Honickman was required to get Commission approval prior to acquiring any soft drink company in the New York area. In his application, Honickman asserted that his acquisition of Brooklyn Bottling would be procompetitive because it would enable him to achieve economies of scale in the marketing and distribution of Dr Pepper/Seven–Up brands. In the alternative, Honickman argued that his application

should be approved under the "failing company" doctrine, notwithstanding any anticompetitive effects of the acquisition.

The FTC considered Honickman's application over an eight-month period, using informal "notice and comment" procedures. Subsequently, in a four-page opinion letter, the FTC denied the application on the principal ground that Honickman had failed to demonstrate that the proposed acquisition would not violate the antitrust laws or otherwise conflict with the remedial purposes of the consent agreement. *See* Letter from Donald S. Clark, Secretary, FTC, to Peter E. Greene, Attorney for Harold Honickman (Oct. 3, 1991) (*"Letter Opinion "*), *reprinted in* Joint Appendix ("J.A.") at 96. The Commission also rejected Honickman's claimed reliance on the "failing company" doctrine, explaining that it "had no adequate basis to determine whether Honickman [was] the sole plausible acquirer." *Id.* at 3.

Thereafter, Honickman and DPSU filed suit in the District Court, arguing (1) that the Commission's failure to hold a hearing on Honickman's application violated both the Administrative Procedure Act ("APA") and the due process clause of the Constitution; (2) that the Commission's refusal to grant prior approval was otherwise arbitrary and capricious; and (3) that, in any event, the application should have been approved pursuant to the "failing firm" doctrine. On cross motions for summary judgment, the District Court held in favor of the FTC and dismissed Honickman's challenge. This appeal followed.

## II. DISCUSSION

### A. *Standards of Review*

■ Although this is an appeal from a judgment of the District Court, we review the Commission's action in this case *de novo.* Where "the decision under review [is] the district court's assessment of the legal sufficiency of [an] agency's action in light of the record[,] our task [is] precisely the same as the district court's." *Occidental Petroleum Corp. v. SEC,* 873 F.2d 325, 340 (D.C.Cir.1989). Like the District Court below, our review of the Commission's informal adjudication is limited to determining whether the Commission's decision is arbitrary and capricious. *See* 5 U.S.C. § 706(2)(A) (1988); *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 415–16, 91 S.Ct. 814, 823–24, 28 L.Ed.2d 136 (1971). Therefore, "[t]he District Court's decision is not entitled to any particular deference." *Hennepin County v. Sullivan,* 883 F.2d 85, 91 (D.C.Cir.1989), *cert. denied,* 493 U.S. 1043, 110 S.Ct. 837, 107 L.Ed.2d 833 (1990). Similarly, we review *de novo* the District Court's conclusions regarding the constitutionality of the Commission's prior approval procedures. *Propert v. District of Columbia,* 948 F.2d 1327, 1331 (D.C.Cir.1991). Hence, notwithstanding the intervening step, we proceed as if the Commission's decision had been appealed to this court directly.

### B. *Procedural Issues*

DPSU has attacked several aspects of the FTC's prior approval procedures. First, DPSU complains that the Commission improperly placed the burden of proof on Honickman to demonstrate that the proposed acquisition would not violate the relevant antitrust laws. Second, DPSU contends that, under the APA, the Commission was required to hold an on-the-record hearing regarding Honickman's application. Third, DPSU maintains that Honickman's Due Process rights were violated by the Commission's failure to hold a more formal hearing on his application. We find these arguments to be meritless.

■ Under applicable FTC regulations, *all* requests for "prior approval" are governed by Commission Rule 2.41(f). 16 C.F.R. § 2.41(f) (1992).[1] Indeed, Honick-

---

1. Rule 2.41(f) provides in pertinent part:
   All applications for approval of proposed ... acquisitions ... subject to Commission review under outstanding orders ... will be placed on the public record as soon after they are received.... Within thirty (30) days after such requests ... are placed on the public record, any person may file formal written objections or comments with the Secretary of the Commission. Such objections or com-

man apparently understood that rule 2.41(f) governed his application since he sought approval "[p]ursuant to Section 2.41(f)." *See* Harold Honickman's Application for Approval of the Acquisition of Certain Assets of 7–Up Brooklyn Bottling Company, Docket No. 9233 (Feb. 12, 1991) (*"Honickman Application"*), *reprinted in* J.A. at 43. As the District Court explained, the Commission's regulations require the party seeking Commission approval to show that the proposed acquisition would not violate the antitrust laws. *See Dr. Pepper/Seven–Up*, 798 F.Supp. at 771–72; *see also West Texas Transmission L.P. v. Enron Corp.*, 1989–1 Trade Cas. (CCH) ¶ 68,424 at 60,334, 1988 WL 156330 (W.D.Tex.1988), *aff'd*, 907 F.2d 1554 (5th Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 1105, 113 L.Ed.2d 215 (1991). Thus, the "prior approval" proceeding is *not* the equivalent of a new adjudicative procedure in which the Commission must prove that the proposed transaction may substantially lessen competition in the relevant market. Rather, prior approval proceedings are used by the Commission to determine whether and how to exercise regulatory discretion that has been created pursuant to a consent agreement. In such circumstances, the burden of proof is on the party seeking "prior approval." Any party desiring to avoid this burden may simply decline to execute a consent agreement with the Commission (or seek to execute an agreement with more favorable terms).

■ Furthermore, we concur in the District Court's rejection of DPSU's claim that Honickman was entitled to an on-the-record hearing under the APA. *See Dr. Pepper/Seven–Up*, 798 F.Supp. at 773–76. Suffice it to say that the FTC's disposition of this matter was not governed by the Clayton or FTC Acts, but by FTC regulations, which do not require an on-the-record hearing for the disposition of prior approval applications. Since it is fundamental that the APA only requires on-the-record hearings on matters "required by statute to be determined on the record after oppor-

tunity for an agency hearing," 5 U.S.C. § 554, the notice and comment procedures used by the FTC were adequate in this case. *See Pension Ben. Guaranty Corp. v. LTV Corp.*, 496 U.S. 633, 653–56, 110 S.Ct. 2668, 2679–81, 110 L.Ed.2d 579 (1990).

■ Finally, we agree that DPSU's Due Process argument is specious. Assuming, *arguendo*, that Honickman had a constitutionally protected interest at stake, we would nonetheless conclude that it was adequately protected by the informal procedures provided. We find entirely convincing the District Court's balancing of the asserted interests under the test described in *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). *See Dr. Pepper/Seven–Up*, 798 F.Supp. at 775–76. In this case, the alleged private interest in protecting Honickman's freedom to contract is unusually weak because of his voluntary agreement to get FTC approval prior to any acquisition in the soft drink industry. On the other hand, the Government has a substantial interest in expediting prior approval applications and resolving formal complaints through negotiated settlement rather than litigation. *Cf. United States v. ITT Continental Baking Co.*, 420 U.S. 223, 95 S.Ct. 926, 43 L.Ed.2d 148 (1975) (FTC consent orders are as enforceable as adjudicated orders). Lastly, we find little risk that the procedures presently employed by the FTC will result in erroneous denials. In this case, for instance, Honickman was fully apprised of the Commission's concerns as a result of the formal complaint and he was given ample opportunity to respond during the prior approval proceedings. Thus, the FTC's prior approval process, as applied in this case, does not infringe upon any constitutional right.

## C. *Honickman's Failure to Meet His Burden*

■ Under the APA, we review informal agency adjudications to determine whether the agency's decision was "arbi-

---

ments shall be placed on the public record.... All responses to applications for approval ... together with a statement of sup-

porting reasons, will be published when made.

trary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). In order to satisfy this standard, the Commission's decision must be based upon consideration of the relevant factors and must be adequately explained in the administrative record to allow judicial review. *Overton Park*, 401 U.S. at 416–20, 91 S.Ct. at 823–26; *see also Bowman Transp., Inc. v. Arkansas–Best Freight Sys., Inc.*, 419 U.S. 281, 285, 95 S.Ct. 438, 441, 42 L.Ed.2d 447 (1974) (agency must articulate a connection between facts and conclusions). For the reasons stated in the District Court opinion, we agree that the Commission's determination that Honickman failed to demonstrate that the proposed acquisition would not violate the antitrust laws was not arbitrary and capricious.

In 1989, the FTC issued a formal complaint against Honickman. *See In the Matter of Harold Honickman*, No. 9233 (Nov. 2, 1989), *reprinted in* J.A. at 1. In that complaint, the FTC identified several anticompetitive effects that it anticipated as a result of Honickman's acquisition of Brooklyn Bottling. *See id.* at 7. Specifically, the FTC feared that Honickman's acquisition would reduce direct competition among bottlers in the area, reduce competition among soft-drink brands, increase the likelihood of collusion, and increase barriers to entry in the market. *See id.* Inexplicably, Honickman elected to avoid these issues in his application for prior approval. *See Honickman Application* at 5–6. Instead, Honickman defended his proposed acquisition of Brooklyn Bottling on the ground that it would produce economies of scale that would make Brooklyn Bottling a more efficient competitor. *See id.* As the District Court explained, it was not arbitrary for the Commission to conclude that Honickman had thus failed to provide the requisite level of supporting evidence to warrant approval of his application. *See Dr. Pepper/Seven–Up*, 798 F.Supp. at 776–78.

Furthermore, we have no difficulty in divining the path the FTC followed in reaching this conclusion. In its opinion letter, the Commission reiterated the concerns that it had highlighted in its formal complaint, and expressly relied upon Honickman's failure to address those concerns as a basis for its decision. *See Letter Opinion* at 2–3. In addition, the Commission discounted Honickman's claim that the transaction would be procompetitive as incomplete and unsupported. *See id.* Thus, the opinion letter articulated a satisfactory basis for the Commission's decision.

## D. *The "Failing Company" Defense*

■ By contrast, the Commission's explanation for its refusal to approve the proposed transaction under the "failing company" doctrine is wholly inadequate. To begin with, the FTC does not contend that the consent agreement eliminated consideration of the "failing company" doctrine. Thus, because the petitioner asserted the doctrine in support of his application—as an independent basis for approving an otherwise unlawful acquisition—the Commission was bound to determine the applicability of the doctrine under prevailing legal standards. Of course, that does not mean that the Commission was compelled to hold an on-the-record hearing on the matter. Since the Commission was not charging a violation of the antitrust laws, the prescriptions of section 7 of the Clayton Act and section 5 of the FTC Act were not implicated. Thus, it was not improper for the FTC to dispose of this issue using only informal procedures. However, here again, we review the Commission's decision to determine whether it was arbitrary and capricious.

■ The "failing company" doctrine recognizes that the purpose of the Clayton Act is not served by prohibiting companies from purchasing failing competitors when there are no other alternatives. *See International Shoe Co. v. FTC*, 280 U.S. 291, 302–03, 50 S.Ct. 89, 92–93, 74 L.Ed. 431 (1930). There are three requirements that must be satisfied to justify an acquisition under the "failing company" doctrine. First, the proponent of the acquisition must show that the company to be acquired is in imminent danger of failure. *United States v. General Dynamics Corp.*, 415 U.S. 486, 507, 94 S.Ct. 1186, 1198, 39 L.Ed.2d 530

(1974); *see also Michigan Citizens for an Indep. Press v. Thornburgh*, 868 F.2d 1285, 1288 (D.C.Cir.) ("indeed, [acquisition] must be the last straw at which the company can grasp") (internal quotation omitted), *aff'd*, 493 U.S. 38, 110 S.Ct. 398, 107 L.Ed.2d 277 (1989). Second, the failing company must have no realistic prospect for a successful reorganization. *Michigan Citizens*, 868 F.2d at 1288 ("the prospects for successful reorganization under the bankruptcy laws must be 'dim or nonexistent' ") (quoting *Citizen Publishing Co. v. United States*, 394 U.S. 131, 138–39, 89 S.Ct. 927, 931, 22 L.Ed.2d 148 (1969)). Third, the proponent must demonstrate that there is no other viable alternative purchaser. *Citizen Publishing*, 394 U.S. at 138, 89 S.Ct. at 931. In order to satisfy the third criterion, the proponent of the acquisition must demonstrate that it has made a reasonable, good faith attempt to locate an alternative buyer. *See Michigan Citizens*, 868 F.2d at 1288; *see also* U.S. Department of Justice, Merger Guidelines § 5.1 (1984) (firm must make "unsuccessful good faith efforts to elicit reasonable alternative offers of acquisition of the failing firm that would both keep it in the market and pose a less severe danger to competition"), *reprinted in* 49 Fed.Reg. 26824, 26837 (1984).

In this case, Honickman and DPSU have at least a colorable "failing company" claim. First, there is no dispute that Brooklyn Bottling was a failed business. *See In re Seven–Up Brooklyn Bottling Co.*, No. 090–71516–21 (Bankr.E.D.N.Y. May 2, 1991) at 11 (finding that "[t]he debtor is a failed business … and there exists no viable proposal or option which would allow for the debtor to recommence operations or continue in its normal course of business"). Second, it appears from the record that there was no realistic possibility that Brooklyn Bottling could be reorganized under the bankruptcy laws so that it might continue as a going concern. *See id.* Hence, the point of contention between DPSU and the FTC is whether Honickman adequately demonstrated the absence of alternative purchasers.

The administrative record contains several pieces of evidence tending to indicate that no other party was interested in purchasing Brooklyn Bottling. *See, e.g., In re Seven–Up Brooklyn Bottling Co.*, No. 090–71516 (Bankr.E.D.N.Y. Mar. 5, 1991) (bankruptcy auction did not generate other viable bids), *reprinted in* J.A. at 318; Letter from John R. Albers, President, DPSU, to Janet D. Steiger, Chairman, FTC (June 17, 1991) at Appendix A (describing unsuccessful search done by Robert T. Shircliff & Associates), *reprinted in* J.A. at 410. In our view, this evidence constitutes at least prima facie evidence that Honickman and DPSU made a "canvass sufficient to indicate that further efforts would be unlikely to bear fruit." 4 PHILLIP AREEDA & DONALD F. TURNER, ANTITRUST LAW ¶ 929a (1980).

Nonetheless, without even a passing reference to most of the posited evidence, the Commission concluded that Honickman's application did not satisfy the requirements of the "failing company" doctrine. For instance, the FTC dismissed the probativity of the bankruptcy auction because of Honickman's participation in the bidding. *See Letter Opinion* at 3. Yet, the opinion letter does not explain how Honickman's bid affected other potential bidders, nor does it point to any evidence in the record to substantiate an inference that it did. Moreover, the Commission made no findings whatever regarding the other searches purportedly made by Honickman and DPSU. Instead, the Commission simply concluded that there was "no adequate basis to determine whether Honickman [was] the sole plausible acquirer." *Id.*

In sum, the FTC's conclusory dismissal of Honickman's "failing company" claim leaves too many questions unanswered to qualify as reasoned decisionmaking. The District Court thoughtfully tried to provide the analysis missing from the opinion letter, and counsel at oral argument attempted to fill in the gaps with citations to the record. Timely made, their arguments may have been sufficient reasons for not approving the proposed transaction under the "failing company" doctrine, but as *post hoc* rationalizations, they cannot substitute

for adequate agency analysis. *See Overton Park*, 401 U.S. at 419, 91 S.Ct. at 825. Thus, there is nothing to support the FTC's refusal to allow the acquisition under the "failing company" doctrine; this portion of the Commission's decision must be reversed as arbitrary and capricious and remanded for further consideration.

### III. Conclusion

For the foregoing reasons, we affirm the FTC's denial of Honickman's application to the extent that it relied on the petitioner's failure to address the competitive effects of the proposed acquisition. However, the Commission's rejection of Honickman's "failing company" claim is wholly unjustified in the FTC's opinion letter. Thus, we reverse in part and instruct the District Court to remand the case to the FTC for reconsideration of Honickman's acquisition under the failing company doctrine.