**Carolyn M. GRANT, Appellant,**

v.

**UNITED STATES AIR FORCE,
et al., Appellees.**

**No. 98–5568.**

United States Court of Appeals,
District of Columbia Circuit.

Argued Oct. 20, 1999.

Decided Dec. 14, 1999.

---

Carol J. Banta argued the cause for the appellant.

Lisa Goldfluss, Assistant United States Attorney, argued the cause for the appellees. Wilma A. Lewis, United States Attorney, and R. Craig Lawrence, Assistant United States Attorney, were on brief for the appellees.

Before: SENTELLE, HENDERSON and GARLAND, Circuit Judges.

Opinion for the court filed by Circuit Judge KAREN LeCRAFT HENDERSON.

KAREN LeCRAFT HENDERSON, Circuit Judge:

Plaintiff Carolyn Grant (Grant) sought to enjoin the United States Air Force (Air Force) from discharging her from the Air Force Reserves. She claimed that, in non-selecting her for reenlistment, the Air Force denied her due process and violated the Administrative Procedure Act, 5 U.S.C. § 702. The district court denied Grant's motion for a temporary restraining order and granted summary judgment to the Air Force. For the reasons set forth below, we affirm the district court.

## I.

Grant had been a civilian Air Reserve Technician and an enlisted member in the Communications Flight unit of the 459th Airlift Wing, Air Force Reserves, since 1980. Air Force regulations required Grant to reenlist within six months of December 7, 1997, the date of her expiration of term of service (ETS).[1] Grant signed a reenlistment contract on June 4, 1997,[2] three days before the six-month reenlistment window opened. Although her unit commander, Lieutenant Colonel Brad Buchanan, could have declared her ineligible

---

**1.** To be eligible for reenlistment an enlisted Air Force member must be "within 6 months of current ETS." Air Force Instruction (AFI) 36–2612 § 2.1.

**2.** All dates occurred in 1997 unless otherwise noted.

for reenlistment by nonselecting her before she signed the reenlistment contract, *see* Air Force Instruction (AFI) 36–2612 § 3.5.3, once the reenlistment contract was properly executed, Buchanan could not nonselect her. *See id.* § 2.4.

The Air Force attempted to void Grant's reenlistment contract three times. First, on June 10, Major Ted Covert, the 459th Airlift Wing Military Personnel Flight Commander, concluded that Grant's reenlistment contract was invalid because she signed it prematurely. On August 8 Grant was informed that Covert had "voided out" her reenlistment contract. *See* Complaint ¶ 12. Grant immediately met with Covert who informed her that her reenlistment contract had been removed from her record and that Buchanan had made the decision to void it. Under the applicable regulations, however, neither Covert nor Buchanan was authorized to void her reenlistment contract. *See* AFI 36–2612 §§ 4.5.1, 4.5.1.1. Subsequently, on September 18, Chief Master Sergeant Eva Holland, Director of Military Personnel, 22nd Air Force, voided Grant's reenlistment contract. This attempt was also invalid because Grant had not yet submitted her statement of circumstance explaining why her contract should not be voided, as she was entitled to do under the regulations. *See id.* § 4.5.1.1. Finally, on October 31, Holland again voided Grant's reenlistment contract after Grant submitted her statement of circumstance.

On September 7 Buchanan nonselected Grant for reenlistment.[3] Buchanan notified Grant of her nonselection on September 9 by letter and accompanying package sent certified mail.[4] Grant failed to appeal her nonselection to Military Personnel Flight before the next Unit Training Assembly, *see* AFI 36–2612 § 3.5.5.1, and therefore waived her right to further review. Her only challenge to the district court's grant of summary judgment involves her reenlistment contract which she maintains was not properly voided.[5]

## II.

■ On appeal Grant argues that her reenlistment contract was valid because the three-day prematurity defect was cured on June 7 when the six-month period began (the Air Force having failed to discover the defect until June 10). We apply *de novo* review "[w]here the decision under review is the district court's assessment of the legal sufficiency of an agency's action in light of the record." *Dr Pepper/Seven–Up Cos. v. FTC,* 991 F.2d 859, 862 (D.C.Cir.1993) (quotation omitted). "[O]ur review ... is limited to determining whether [the Air Force's] decision is arbitrary and capricious." *Id.* (citation omitted).

The record indicates that Grant did not raise her contract claim before the district court, either in her complaint or in her opposition to the Air Force's summary

---

3. Different Air Force regulations govern the nonselection of a member for reenlistment and the voiding of a reenlistment contract. To nonselect a member for reenlistment, the unit commander "personally advises the member of the nonselection" and "advises the member in writing of the right to appeal nonselection under paragraph 3.8 of this instruction." AFI 36–2612 § 3.5.3.2. A member who has been nonselected "must submit a written appeal to [Military Personnel Flight] by the next scheduled [Unit Training Assembly] after the date [he is] notified." *Id.* § 3.5.5.1. By contrast, a reenlistment contract is voided by a "numbered" (here, the 22nd) Air Force official. *See id.* §§ 4.5.1, 4.5.1.1.

4. The letter and package were returned by the United States Post Office marked "refused." The mail carrier who attempted delivery testified that he specifically recalled delivering the certified mail to Grant at her apartment and that Grant refused both. Grant admitted that she refused to accept the package, *see* Complaint ¶ 17, but denied that she refused to accept the certified letter. *See* Grant's November 18, 1997 Memorandum.

5. Although Grant challenged her nonselection in her complaint filed in district court, she has not challenged it on appeal.

judgment motion. At argument Grant maintained that, by explicitly challenging her nonselection in her complaint, she also challenged by implication the voiding of her reenlistment contract because "the nonselection issue which we are not pursuing on appeal and the contract issue were very closely intertwined." Transcript of October 20, 1999 Oral Argument 4; *cf.* Reply Br. 3–4. Although the district court addressed the reenlistment contract issue, *see* Memorandum Opinion 2 n.1, 17–18 ("the plaintiff contends that the Air Force acted arbitrarily and capriciously when it voided her reenlistment contract"), it is not clear why the district court mentioned the issue because, in another footnote, it indicated that it believed the contract issue had been resolved. *See id.* at 9 n. 6 ("Grant now concedes that the Air Force's final decision of October 28 [sic], 1997 to void her reenlistment contract corrected any procedural defects in the original voiding of the contract.").

■ "Absent 'exceptional circumstances,' the court of appeals is not a forum in which a litigant can present legal theories that it neglected to raise in a timely manner in proceedings below."[6] *Tomasello v. Rubin,* 167 F.3d 612, 618 n. 6 (D.C.Cir.1999). Nevertheless, assuming without deciding that Grant properly preserved her contract argument, her challenge fails on the merits. The Air Force complied with AFI 36–2612 when Holland voided Grant's reenlistment contract on October 31. Grant concedes that her reenlistment contract was voidable, *see* Petitioner's Br. 12, and that the Air Force ultimately properly voided the contract. *See* Reply Br. 2 (Grant "did not challenge the Air Force's *pro forma* procedural compliance with its regulations in the third attempt to void Grant's contract"). She

argues, however, that under the holding in *Vitarelli v. Seaton,* 359 U.S. 535, 545–46, 79 S.Ct. 968, 3 L.Ed.2d 1012 (1959), the Air Force's *pro forma* compliance cannot cure its previous error. In *Vitarelli* the Secretary of the United States Department of the Interior dismissed an employee on September 10, 1954 because his "sympathetic association" with Communist supporters posed a "security risk." Purporting to act pursuant to departmental regulations, the Secretary filed a "Notification of Personnel Action" on September 21, 1954 setting forth the reasons for the employee's dismissal. The employee then challenged her termination as illegal and ineffective because the Secretary had failed to comply with the regulations applicable to dismissal for national security reasons. Two years later, the Interior Department, realizing it had failed to comply with its regulations, reissued the notification, backdated to September 21, 1954 and described as "a revision of and replac[ing] the original bearing the same date." The notification was identical to the original except that it omitted any reference to the reason for the employee's discharge or to the authority under which the discharge was effected. The Supreme Court held that the *post hoc* compliance did not validly "revise" the initial defective dismissal. Grant's case is distinguishable. Holland's second voiding of Grant's reenlistment contract was not "a revision" of her first attempt but an entirely new action which addressed Grant's statement of circumstance as intended by the regulations.[7] Thus, Holland properly voided Grant's reenlistment contract on October 31 and, unlike the Interior Department in *Vitarelli,* did so timely. The fact that the Air Force erred in two earlier attempts does not nullify its final, and correct, voiding of

---

6. Although Grant appeared to challenge the contract voiding in her reply brief, *see* Reply Br. 11–12, our caselaw makes clear that an argument first made in a reply brief comes too late. *See Fraternal Order of Police v. United States,* 173 F.3d 898, 902–03 (D.C.Cir. 1999).

7. Holland's October 31st memorandum voided Grant's contract "[a]fter further review of the request to void the reenlistment (including the member's Statement of [Circumstance]) of Sergeant Grant."

Grant's reenlistment contract in compliance with AFI 36–2612. Accordingly, the district court is

*Affirmed.*