DYNAQUEST CORP., d/b/a A.C.L.,
et al., Appellants,

v.

UNITED STATES POSTAL
SERVICE, Appellee.

No. 99–5326.

United States Court of Appeals,
District of Columbia Circuit.

Argued Sept. 12, 2000.

Decided March 13, 2001.

Max Kravitz argued the cause for appellants. With him on the briefs was David B. Smith.

David T. Smorodin, Assistant U.S. Attorney, argued the cause for appellee. With him on the brief were Wilma A. Lewis, U.S. Attorney, and R. Craig Lawrence, Assistant U.S. Attorney.

Before: HENDERSON, RANDOLPH and GARLAND, Circuit Judges.

Opinion for the Court filed by Circuit Judge GARLAND.

GARLAND, Circuit Judge:

Dynaquest Corp. seeks the release of funds held in escrow in connection with administrative proceedings brought against the company by the United States Postal Service. Various incarnations of Dynaquest's claims have been heard by numerous courts—including this court and the United States Court of Appeals for the Sixth Circuit—over a period spanning ten years. We conclude that Dynaquest's present efforts to obtain the funds are barred by the doctrine of res judicata and affirm the district court's dismissal of Dynaquest's complaint.

I

Dynaquest, an Ohio corporation, buys and sells discontinued lines, unwanted special order items, liquidated goods, and other "distressed merchandise." It also mails unsolicited advertisements for a training program, which includes a manual entitled *Liquidate Your Way to a Fortune*, instructing purchasers in the business of asset location and liquidation.

On June 7, 1990, the Postal Service filed an administrative complaint against the company before a Postal Service Administrative Judicial Officer (AJO) in Washington, D.C. The complaint charged Dynaquest with "conducting a scheme for obtaining money or property through the mail by means of false representations," in violation of 39 U.S.C. § 3005. Postal Service Compl. at 1 (J.A. at 54). The complaint alleged that the company's mailings contained eleven false representations.[1] Eight days later, the Postal Service filed a separate action in the United States District Court for the Southern District of Ohio, pursuant to 39 U.S.C. § 3007, seeking a temporary restraining order and preliminary injunction directing the detention of Dynaquest's mail pending the resolution of the § 3005 administrative proceedings. Section 3007 authorizes the district court in the district in which a defendant receives its mail to enter such interim relief. 39 U.S.C. § 3007(a).

The Ohio district court issued a temporary restraining order under § 3007, directing the Postal Service to hold all checks and accompanying information mailed in response to the Dynaquest ad-

---

1. As discussed below, three of the eleven allegations were ultimately upheld on appeal. *DynaQuest Corp. v. United States Postal Serv.*, 12 F.3d 1144 (D.C.Cir.1994). Those allegations charged that Dynaquest falsely represented it would: (1) "assist purchasers of [its] program to earn ... thousands of dollars without the need ... to make any additional payments to [Dynaquest]," (2) "pay a hundred dollars ($100.00) in cash to any addressee who purchases [the] program," and (3) "provide purchasers of the program with comprehensive training in the merchandise liquidation field." Postal Service Compl. ¶¶ 10(d), (g), (i) (J.A. at 56–57).

vertisements, and scheduled a hearing on the Postal Service's motion for a preliminary injunction for June 21, 1990. Prior to commencement of the hearing, the parties entered into—and the court approved—an "Agreed Order." The Agreed Order required that all checks and applications be returned to prospective customers, along with a "bounce-back" letter "clarifying" Dynaquest's offer and asking whether the customers still wished to purchase Dynaquest's services. Agreed Order at 1–2 (J.A. at 51–52). The Order further directed the Postal Service to forward any checks sent by customers who had received bounce-back letters to a co-administered escrow account. Finally, the parties stipulated that the Agreed Order would remain in effect until "the final disposition of the administrative complaint," *id.* at 1 (J.A. at 51), which would "be deemed to occur after the conclusion of any appeal by [Dynaquest] from the ... decision of the Postal Service Judicial Officer," *id.* at 2–3 (J.A. at 52–53).

Following entry of the Agreed Order, the parties proceeded to litigate the § 3005 proceeding in Washington, D.C., and then returned to Ohio to litigate the § 3007 proceeding. In 1996, Dynaquest once again went to Washington to file the pleadings that led to the instant appeal. We describe each of these three courses of litigation below, in order to provide the background necessary to understand our disposition of this case.

### A

During the summer of 1990, the AJO conducted a full trial–type hearing in the § 3005 proceeding in Washington, D.C. Following the hearing, the AJO concluded that Dynaquest had violated the statute by making four of the materially false representations alleged in the Postal Service's complaint. *In re A.C.L.*, P.S. Docket No. 36/90 (U.S. Postal Serv. Dec. 28, 1990). Dynaquest was ordered to cease and desist from making those representations.

On March 18, 1991, Dynaquest moved for reconsideration of the AJO's decision, challenging the false representation find-

ings and requesting the release of the funds held in escrow. Resp't Mot. for Recons. (J.A. at 259). With respect to the latter request, Dynaquest argued that because the escrow funds were sent by customers who had received the bounce-back letters, any initial misrepresentations had been cured. Thus, Dynaquest argued, it would be unjust to deprive the company of those funds. *Id.* at 12–16 (J.A. at 270–74).

The AJO denied Dynaquest's motion in its entirety. *In re A.C.L.*, P.S. Docket No. 36/90 (U.S. Postal Serv. May 15, 1991). He rejected the company's challenges to the false representation findings, and dismissed the request for the release of funds on the ground that the escrow accounts had been established under the Agreed Order of the district court in Ohio. Only that court, the AJO held, had jurisdiction over the interpretation and enforcement of its own Order. *Id.* at 4.

Dynaquest sought review of the AJO's decisions in the United States District Court for the District of Columbia, pursuant to the Administrative Procedure Act, 5 U.S.C. §§ 701–706 (1994). It sought a declaratory judgment that the false representation findings were not supported by substantial evidence and an injunction against enforcement of the AJO's order. Dynaquest did not, however, reassert its claim that the bounce-back letters had cured any alleged misrepresentations, nor did the company otherwise appeal the AJO's determination that he lacked jurisdiction over the escrow funds. On cross motions for summary judgment, the district court affirmed the AJO's findings regarding three of the four representations, vacated the fourth, and sustained the Postal Service's order. *Dynaquest Corp. v. United States Postal Serv.*, No. 91–1582 (D.D.C. Mar. 5, 1992). Dynaquest appealed to this court, contending that two of the three findings upheld by the district court were not supported by substantial evidence. We affirmed the district court's decision on January 18, 1994. *DynaQuest Corp. v. United States Postal Serv.*, 12

F.3d 1144 (D.C.Cir.1994). Dynaquest did not seek further review.

## B

In early 1994, the parties filed cross motions for summary judgment in the still-pending § 3007 proceeding in the Southern District of Ohio, seeking to resolve the disposition of the escrow funds. On June 2, 1994, the district court granted judgment for the Postal Service and directed that the funds be returned to Dynaquest's customers. *United States Postal Serv. v. Klass*, No. C2–90–450, slip op. at 9, 11 (S.D. Ohio June 2, 1994). The court interpreted the language of the Agreed Order to require that, upon final disposition of the administrative complaint, the funds were to go to the party prevailing in the § 3005 proceeding in Washington. *Id.* at 9. This interpretation was confirmed, the court said, by statements of Dynaquest's counsel at a status conference held in the § 3007 proceeding in February 1992. *Id.* at 9–10. In light of this circuit's affirmance of the AJO's findings of misrepresentation, and Dynaquest's failure to seek further review, the Ohio district court concluded that final disposition of the § 3005 administrative complaint had occurred and that the Postal Service was the prevailing party. *Id.* at 8–9. The court rejected as irrelevant Dynaquest's claim that the bounce-back letters had cured the misrepresentations. Section 3007 did not give it authority to make such a determination, the court said. Whether customers were misled was a question for the § 3005 proceeding, and that proceeding was now closed. *Id.* at 9–10.

Dynaquest appealed the Ohio district court's refusal to award it the escrow funds to the United States Court of Appeals for the Sixth Circuit. The company made two principal points. First, it argued that the district court erred in not determining whether the bounce-back let-

ters cured the misrepresentations. The Sixth Circuit rejected this argument, holding that the district court was indeed without authority to decide, in a § 3007 proceeding, whether the bounce-back letters violated the false representations statute. That, the court said, could only have been decided in the § 3005 proceeding in Washington, and Dynaquest should have amended its administrative pleadings to raise the issue there. *United States Postal Serv. v. Klass*, 74 F.3d 1241 (6th Cir.1996) ("Section 3007 specifies that the district court issuing the injunction has no authority to 'determine any fact at issue in the statutory proceeding.'" (quoting 39 U.S.C. § 3007(a) (repealed 1999))).

Second, Dynaquest argued that the district court erred in construing the Agreed Order to require disposition of the escrow funds to the victor in the § 3005 proceeding. Moreover, the company insisted, the court further erred in interpreting its counsel's statements as confirming that view. Once again, the Sixth Circuit disagreed, this time on the merits:

> [F]orwarding the money to Dynaquest would violate the intent of the parties when they entered into the agreement. Statements from the injunction hearing indicate the parties' understanding that Dynaquest would not receive the funds unless it prevailed on all of the claims of misrepresentation. The record clearly demonstrates Dynaquest's expectation that it would not receive the escrowed funds unless it prevailed.

*Id.* (citation omitted). By the terms of the Agreed Order, the Sixth Circuit held, Dynaquest could not obtain the escrow funds unless it defeated all of the allegations of misrepresentation. *Id.* Because Dynaquest had not, the court affirmed the award of the escrow funds to the Postal Service. *Id.* at *3.[2]

---

**2.** Although the Southern District of Ohio stated that the escrow funds should be returned to Dynaquest's customers, the Sixth Circuit described the district court's order as awarding the funds to the Postal Service. The Post-

al Service has indicated that once it gains possession of the funds, it intends to release them to the customers. Further action regarding release of the funds has been stayed, however, pending resolution of this appeal.

C

On June 19, 1996, Dynaquest returned to Washington to file a motion with the AJO seeking, inter alia, an order directing release of the escrow funds. Dynaquest argued that the Postal Service did not have authority under the AJO's original order to return remittances to those who had received bounce-back letters. Dynaquest Mot. at 16 (J.A. at 35). Dynaquest also argued that it had never received a hearing on the merits of its claim that it was entitled to the escrow funds because the bounce-back procedures had cured any misrepresentations in its initial solicitations. *Id.*

On December 30, 1997, the AJO denied Dynaquest's request. *In re A.C.L.*, P.S. Docket No. 36/90 (U.S. Postal Serv. Dec. 30, 1997). The AJO held that "the disposition of the escrowed funds is essentially a question of interpreting the provisions of the Agreed Order that was negotiated by the parties and issued by the United States District Court for the Southern District of Ohio." *Id.* at 5. That court, the AJO said, had concluded that Dynaquest "had failed to prevail in the § 3005 proceedings, and that under the terms of the Agreed Order the funds held in escrow were to be returned to the consumers who had ordered [Dynaquest's] materials." *Id.* Moreover, the AJO stressed, the Sixth Circuit had affirmed the district court's order, concluding that Dynaquest was "precluded from receiving the escrowed funds by the terms of the Agreed Order that [it] entered into." *Id.* at 5–6. Dynaquest's current motion was, therefore, "in effect, a collateral attack on the judgments of those two courts and seeks to have the Judicial Officer overrule the courts and direct that the funds held in escrow be paid" to Dynaquest. *Id.* at 6. That, the AJO concluded, he did "not have the authority to do." *Id.*

On March 5, 1998, Dynaquest sought review of the AJO's decision in the United States District Court for the District of Columbia. On August 2, 1999, the district court found that Dynaquest's motion for release of the escrow funds was barred by the res judicata effect of the initial, 1990 proceeding before the AJO. "Dynaquest's claim that any false representations in its solicitations were cured by the bounce-back letters," the court said, "was within the purview of the [1990] administrative proceeding. Dynaquest's failure to litigate this issue constitutes a waiver of its right to raise it in subsequent proceedings." *Dynaquest Corp. v. United States Postal Serv.*, No. 98–0564, slip op. at 5–6 (D.D.C. Aug. 2, 1999) (citations omitted). On September 27, 1999, Dynaquest filed a notice of appeal.[3]

II

■ Although the course that led the parties to this court was a tortuous one, disposition of this appeal is not equally difficult. The United States District Court for the Southern District of Ohio concluded that, by the terms of the Agreed Order approved by that court, Dynaquest was not entitled to the escrow funds. The Sixth Circuit agreed, holding that "the intent of the parties when they entered into" the Agreed Order was that "Dynaquest would not receive the [escrow] funds unless it prevailed on all of the claims of misrepresentation." *Dynaquest*, 1996 WL 20504, at *2. Because Dynaquest had not prevailed on all of the misrepresentation claims, the Sixth Circuit affirmed the award of the funds to the Postal Service. *Id.* at *3. Dynaquest sought no further review.

■ The Sixth Circuit's ruling is a final decision on the merits. The AJO correctly concluded that he was bound by that decision under the doctrine of res judicata. *See Allen v. McCurry*, 449 U.S. 90, 94, 101

**3.** We note that 39 U.S.C. § 3007 was subsequently amended on December 12, 1999, effective 120 days later, to provide: "If any order is issued under [§ 3007(a)] and the proceedings under section 3005 are concluded with the issuance of an order under that section, any judicial review of the matter shall be in the district in which the order under [§ 3007(a)] was issued." 39 U.S.C. § 3007(b).

S.Ct. 411, 66 L.Ed.2d 308 (1980) ("Under res judicata, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action."); *Commissioner v. Sunnen*, 333 U.S. 591, 601, 68 S.Ct. 715, 92 L.Ed. 898 (1948).[4] This court is likewise so bound. Although Dynaquest argues, vehemently, that the Sixth Circuit misconstrued both the language of the Agreed Order and the statements of its counsel, those issues are foreclosed from our consideration. *See Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981) ("Nor are the res judicata consequences of a final, unappealed judgment on the merits altered by the fact that the judgment may have been wrong...."). The place for Dynaquest to have raised those concerns was in a petition for rehearing en banc to the Sixth Circuit, or in a petition for certiorari to the United States Supreme Court. This circuit, however, has no authority to collaterally review the decisions of a sister circuit. *See id.* ("A judgment merely voidable because based upon an erroneous view of the law is not open to collateral attack, but can be corrected only by a direct review...." (citation omitted)); *Fort Sumter Tours, Inc. v. Babbitt*, 202 F.3d 349, 354 (D.C.Cir. 2000).

Dynaquest further contends that res judicata cannot bar its claim regarding the curative effect of the bounce-back letters, because neither the Sixth Circuit nor the Southern District of Ohio decided that claim on the merits. Rather, Dynaquest notes, those courts merely held themselves without authority to decide the claim, on the ground that only the AJO in the § 3005 proceeding had such authority. *See* 18 Charles A. Wright, Arthur R. Miller, & Edward H. Cooper § 4402, at 11

("Dismissal of a suit for want of federal subject matter jurisdiction, for example, should not bar an action on the same claim in a court that does have subject matter jurisdiction...."). Moreover, Dynaquest continues, both the Sixth Circuit and the district court in the present litigation erred in stating that the company had not raised the issue before the AJO. As Dynaquest correctly points out, it did raise the issue in its 1991 motion for reconsideration, where it was met by the AJO's ruling that he lacked jurisdiction to decide the question. *See In re A.C.L.*, P.S. Docket No. 36/90, slip op. at 4 (U.S. Postal Serv. May 15, 1991); Resp't Mot. for Recons. at 16 (J.A. at 274).

■■■■ Unfortunately for Dynaquest, whatever the validity of its arguments about the merits of the bounce-back cure, or about our jurisdiction to resolve that issue, those arguments are now moot. Their only relevance in the present case is to the question of whether the escrow funds should be released to Dynaquest. But the Sixth Circuit has already construed the Agreed Order to bar release of the escrow to Dynaquest—irrespective of any bounce-back cure—because three of the company's initial representations were found to have been false. Accordingly, resolving the bounce-back question would have no impact on disposition of the escrow funds. And because a favorable judicial decision on the bounce-back question would not bring Dynaquest the redress it seeks, we are without authority to adjudicate the issue. *See Iron Arrow Honor Soc'y v. Heckler*, 464 U.S. 67, 70, 104 S.Ct. 373, 78 L.Ed.2d 58 (1983) ("To satisfy the Art. III case-or-controversy requirement, a litigant must have suffered some actual injury that can be redressed by a favorable judicial decision."); *see also Spencer v. Kemna*, 523 U.S. 1, 7, 118 S.Ct. 978, 140

---

4. We use "res judicata" in its generic sense to include the concepts of both issue preclusion (also known as "collateral estoppel") and claim preclusion. Because the meaning and effect of the Agreed Order were litigated by the parties and decided by the court, issue preclusion is the specific concept at work

here. *See Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 77 n. 1, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984); 18 Charles A. Wright, Arthur R. Miller, & Edward H. Cooper, Federal Practice and Procedure § 4402, at 6–8 (1981).

L.Ed.2d 43 (1998); *United States Parole Comm'n v. Geraghty,* 445 U.S. 388, 404, 100 S.Ct. 1202, 63 L.Ed.2d 479 (1980); *FDIC v. Kooyomjian,* 220 F.3d 10, 14–15 (1st Cir.2000).[5]

Finally, Dynaquest contends, for the first time on this appeal, that the decision of the AJO below is invalid because Postal Service AJOs are appointed in violation of the Appointments Clause of the U.S. Constitution. U.S. CONST. art. II, § 2, cl. 2. Although we normally would not permit a litigant to present a legal theory that it failed to raise below, *see Grant v. United States Air Force,* 197 F.3d 539, 542 (D.C.Cir.1999), courts have discretion to consider Appointments Clause challenges raised for the first time on appeal, *see Freytag v. Commissioner,* 501 U.S. 868, 878–79, 111 S.Ct. 2631, 115 L.Ed.2d 764 (1991).[6] But as was true of the bounce-back issue, a victory on its Appointments Clause challenge would not advance Dynaquest's cause. In the decision

presently on appeal, the AJO held nothing more than that he was without authority to grant Dynaquest's motion for release of the escrow funds. He based that holding on his conclusion that the Sixth Circuit's ruling—that the district court's Agreed Order precluded such release—bound him by the force of res judicata. As we have just held, the AJO's resolution of this legal question was correct. No AJO, regardless of the validity of his appointment, would have authority to decide the issue otherwise. Indeed, the same is true of this Article III court. Accordingly, resolution of the Appointments Clause issue in Dynaquest's favor would bring the company no relief and would amount to nothing more than an advisory opinion. Issuance of such an opinion is, of course, beyond our power under Article III. *See Steel Co. v. Citizens for a Better Environment,* 523 U.S. 83, 101, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998); *Hewitt v. Helms,* 482 U.S. 755, 761, 107 S.Ct. 2672, 96 L.Ed.2d 654 (1987).[7]

5. Resolution of the bounce-back question is also barred by the doctrine of res judicata as a result of Dynaquest's failure to appeal the AJO's jurisdictional ruling in 1991. As Dynaquest notes, it raised the bounce-back issue in its 1991 motion for reconsideration before the AJO. In his decision on that motion, the AJO ruled both that Dynaquest's initial representations were false and that he lacked jurisdiction over the bounce-back issue. Although Dynaquest's appeal of the AJO's order challenged the former ruling, it did not challenge the AJO's conclusion that he was without jurisdiction to decide the bounce-back question. Accordingly, that issue is now res judicata between the parties. *See Allen,* 449 U.S. at 94, 101 S.Ct. 411 ("Under res judicata, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were *or could have been* raised in that action." (emphasis added)); *Dozier v. Ford Motor Co.,* 702 F.2d 1189, 1191 (D.C.Cir.1983) ("[T]he doctrine of *res judicata* applies to dismissal for lack of jurisdiction as well as for other grounds...."); 2 KENNETH CULP DAVIS & RICHARD J. PIERCE, JR., ADMINISTRATIVE LAW TREATISE § 13.3, at 250 (3d ed.1994) (noting that res judicata applies to administrative as well as judicial adjudications, and to questions of law as well as fact).

6. We may not, however, consider challenges to the validity of the AJO's 1990 and 1991

decisions, which were affirmed by this court in 1994 and are no longer open to attack. *Cf. Baltimore S.S. Co. v. Phillips,* 274 U.S. 316, 325, 47 S.Ct. 600, 71 L.Ed. 1069 (1927) ("A judgment merely voidable because based upon an erroneous view of the law is not open to collateral attack, but can be corrected only by a direct review and not by bringing another action upon the same cause."); 18 CHARLES A. WRIGHT, ARTHUR R. MILLER, & Edward H. COOPER § 4428, at 282 ("[F]ederal court judgments are binding notwithstanding a simple lack of subject matter jurisdiction, without regard to whether the jurisdictional question was litigated."); *id.* at 282 n. 29 ("An assertion of jurisdiction by an administrative tribunal is likely to be treated in the same way as an assertion by a court if the decision has been subjected to judicial review." (citing *Sunshine Anthracite Coal Co. v. Adkins,* 310 U.S. 381, 403, 60 S.Ct. 907, 84 L.Ed. 1263 (1940))).

7. Dynaquest asserts that this court's decision in *Landry v. FDIC,* 204 F.3d 1125 (D.C.Cir. 2000), establishes that it is "unnecessary that Dynaquest demonstrate that it was directly harmed by the Postal Service's unconstitutional appointments mechanism" in order to obtain judicial review of an Appointments Clause challenge. Dynaquest Br. at 22. In *Landry,* we entertained such a challenge to

## IV

The Sixth Circuit interpreted the district court's Agreed Order as requiring that the escrow funds be awarded to the Postal Service. That holding is res judicata and may not be collaterally attacked in this court. Moreover, because that holding leaves Dynaquest without a remedy even if it were to obtain a favorable ruling

on the additional claims it raises here, we are without authority to adjudicate those claims. The district court's dismissal of Dynaquest's complaint is therefore

*Affirmed.*

---

the authority of an FDIC Administrative Law Judge (ALJ), even though the FDIC had itself reviewed the ALJ's decision de novo, arguably curing any harm that might have resulted from the alleged unconstitutional appointment. *See* 204 F.3d at 1132. In *Landry*, however, a properly-appointed ALJ would have had authority to decide Landry's case. As noted above, in this case even a properly-appointed AJO would lack authority to collaterally review the Sixth Circuit's decision.