PSWF CORPORATION, Petitioner,

v.

FEDERAL COMMUNICATIONS COMMISSION and United States of America, Respondents.

No. 96–1097.

United States Court of Appeals, District of Columbia Circuit.

Argued Dec. 9, 1996.

Decided March 7, 1997.

David J. Kaufman, argued the cause, for petitioner. With him on the briefs, was Scott C. Cinnamon, Washington, DC.

Susan L. Fox, Counsel, Federal Communications Commission, argued the cause, for

respondent. With her on the brief, were William E. Kennard, General Counsel, Daniel M. Armstrong, Deputy Associate General Counsel, Anne K. Bingaman, Assistant Attorney General, U.S. Department of Justice, Robert B. Nicholson and Robert J. Wiggers, Attorneys, Washington, DC.

Before: EDWARDS, Chief Judge, HENDERSON and RANDOLPH, Circuit Judges.

Opinion for the Court filed by Circuit Judge RANDOLPH.

RANDOLPH, Circuit Judge:

The Federal Communications Commission issued an order establishing a new category of 929 megahertz (MHz) private carrier paging licenses. When the Commission refused to reconsider the order, American Mobilphone [1] filed this petition for judicial review.

Historically, the Commission has licensed two types of paging services. Common carrier paging licensees gained the exclusive use of the licensed frequency within their protected service area. Private carrier paging licensees had to share their allotted frequency with other such licensees operating in the same geographic area. By the early 1990's, nearly all common carrier paging channels had been allotted while some private carrier paging channels were underused.

In February 1993, the Commission adopted a notice of proposed rulemaking to give private paging operators exclusive rights to a particular channel. Under the Commission's plan, 35 of the 40 channels in the 929 MHz band were to be so licensed. *See* Notice of Proposed Rule Making, *Amendment of the Commission's Rules to Provide Channel Exclusivity to Qualified Private Paging Systems at 929–930 MHz,* 8 F.C.C.R. 2227. The Commission moved toward exclusivity in order to enhance the efficiency of spectrum usage. When frequencies are shared, the Commission thought, each operator must monitor other operators using the same channels. "Paging

---

1. Shortly after argument, petitioner informed us that all of its assets had been assigned to PSWF Corporation.

operators are reluctant to invest in" technologies to update their systems "when they may be required, in effect, to turn their systems off periodically to accommodate other users." *Id.*

Private carrier paging operators applying for these new exclusive licenses would be given "eight months to construct their systems or channel exclusivity would terminate." *Id.* at 2231. "Because construction of larger systems may take longer than eight months," the Commission proposed "a 'slow growth' option for construction of systems with more than thirty transmitters." *Id.* Under the slow-growth scheme, applicants "could be granted up to three years to construct based on a showing of reasonable need for the extension, a detailed construction timetable, and evidence of financial ability to construct the system." *Id.* "As in the case of conventional applicants, a slow growth applicant's failure to complete construction as proposed would result in forfeiture of exclusivity and revocation of licenses for all unconstructed transmitters." *Id.* at 2231–32.

The Commission also proposed "to extend exclusive channel rights to all systems" then already operating on the 929 MHz band that could satisfy the criteria for exclusivity for new applicants. *Id.* at 2232. Those existing 929 MHz systems too small to qualify for exclusivity would be allowed to continue operating on their assigned frequency "without being forced to change frequencies or location." *Id.* But these licens-ees would have to share their frequencies with the new, otherwise-exclusive licensees. Because this grandfathering interfered with true exclusivity, the Commission requested "comment on what impact grandfathering would have on existing systems and on the ability of new systems to obtain exclusive frequencies." *Id.* at 2233.

The notice of proposed rulemaking stated that the Commission would authorize no new construction of 929 MHz facilities and would accept no new applications for 929 MHz paging channels until the final rule issued. Within a few weeks the Commission realized that its freeze order was having unanticipated adverse effects, "stranding investment in ongoing projects while delaying the ultimate provision of paging service to prospective customers." Order, *Amendment of the Commission's Rules to Provide Channel Exclusivity to Qualified Private Paging Systems at 929–930 MHz,* 8 F.C.C.R. 2460 (1993). And so in March 1993 the Commission adopted an order lifting the freeze. *See id.*

In June 1993, while the Commission was reviewing comments on its proposed rule, American Mobilphone filed fifteen applications for private paging licenses, each covering six proposed transmitters in a system that would spread out over the southeastern United States. These applications were granted at various times from August 1993 through February 1994.

In the meantime, on October 14, 1993, the Commission published a notice (the "Sunshine Notice") of an open meeting on its proposed rule. One month later, on November 17, 1993, the Commission released its final rule. *See* Report and Order, *Amendment of the Commission's Rules to Provide Channel Exclusivity to Qualified Private Paging Systems at 929–930 MHz,* 8 F.C.C.R. 8318 (1993). The final rule generally corresponded with what the Commission had proposed. *See id.* at 8337–41 (codified at 47 C.F.R. §§ 90.495 to 90.496). But in a footnote the Commission stated that the "slow-growth option will be limited to new applications only. We will not grant requests to extend the construction period for grandfathered licenses." *Id.* at 8326 n. 43. Grandfathered licenses were those for whom applications were "filed prior to the Sunshine Notice date"—October 14, 1993. *Id.* at 8329 n. 64; *see id.* at 8340 (codified at 47 C.F.R. § 90.495(e)).

American Mobilphone, which had applied for its licenses prior to the Sunshine Notice, but wanted slow-growth eligibility, sought reconsideration. American also requested that the Commission toll the eight-month construction deadline until it acted on American's reconsideration petition. The Commission instead ordered American to complete construction eight months from the date of the Commission's determination that American's proposed system qualified as a grandfathered paging system to which exclusive

channel rights would be extended. The Commission rendered this decision in May 1994. As of January 1995, when the construction deadline lapsed, the Commission had not acted on American's request for reconsideration.

When the Commission finally denied American's petition for reconsideration on February 8, 1996, it gave this explanation of why it had selected the date of the Sunshine Notice as the cut-off for slow-growth eligibility:

> In our view, as of our Sunshine Notice on October 14, 1993, applicants reasonably could anticipate that we were going to adopt channel exclusivity rules for 929–930 MHz paging licenses. To deter speculative filings, therefore, we decided not to grandfather anyone that filed after October 14, 1993. We believe that the date for dividing "old" from "new" applicants also is the appropriate date for triggering slow growth eligibility. Moreover, we never suggested that slow growth extensions would apply to grandfathered licenses. Indeed, in an April 6, 1993 *Order*, we indicated that all parties in the application and coordination process were expected to comply with existing eight-month construction requirements while our rule making was underway. Consequently, applicants falling into our grandfathered category cannot legitimately claim that they expected to be eligible for slow growth extensions.

Memorandum Opinion and Order, *Amendment of the Commission's Rules to Provide Channel Exclusivity to Qualified Private Paging Systems at 929–930 MHz*, 11 F.C.C.R. 3091, 3095 (1996) (footnote omitted). In other words, the Commission treated those who filed for licenses in anticipation of exclusivity (*i.e.*, those who would become grandfathered) as speculators and imposed the eight-month deadline to cull them out.

■ American complains that the Commission misled it into believing that the same rules concerning slow-growth eligibility that applied to new applicants would also apply to grandfathered applicants like itself. The source of American's belief is a statement from the order lifting the freeze in March

1993: "the status of any authorization granted in the wake of this *Order* is subject to change as a result of subsequent decisions made in this proceeding." Order, *Amendment of the Commission's Rules to Provide Channel Exclusivity to Qualified Private Paging Systems at 929–930 MHz*, 8 F.C.C.R. 2460 (1993). To American, this meant that "any subsequent decisions in the rulemaking proceeding" would be applied to persons who filed applications post-freeze. Final Brief for Petitioners at 13.

■ There are more than a few defects in American's argument. For one thing, agencies may change their minds in the course of a rulemaking, even though those affected may be disappointed. For another thing, American could not possibly have taken the order to mean what it claims. Elsewhere in the order the Commission warned: "Our lifting of the freeze is procedural in nature and should not be construed as in any way predetermining the outcome of the underlying rule making." Order, 8 F.C.C.R. 2460 (1993). The "subject to change" language guaranteed American nothing. Just the opposite. At the time American filed its applications, the Commission's rules required construction and operation within eight months. The Commission's order reminded American and anyone else who took advantage of the lifting of the freeze that ·this eight-month "rule will be strictly adhered to, and any licensee that fails to meet this requirement will be subject to automatic cancellation of its license." *Id.*

■ American's remaining point is that even if the Commission had a basis for treating applicants in its position differently than others, the Commission's choice of the Sunshine Notice date as the cut-off for slow-growth eligibility was arbitrary and capricious. American prefers March 31, 1993—the date the notice of proposed rulemaking went public—or May 1993—the deadline for comments in response to the proposed rule. Anyone who filed after those dates—as American did—should be considered a new applicant eligible for slow-growth and exclusivity. This conveniently fits American's situation but that is about all that can be said in favor of choosing those dates over the Com-

**358**

mission's. Where the Commission drew the line amounted to a policy decision. The Commission surely had the power to draw that line, giving those on one side—those like American—exclusivity they did not have under the prior regime, and those on the other side the option of slow growth. *Cf. Florida Cellular Mobil Communications v. FCC*, 28 F.3d 191, 197 (D.C.Cir.1994). Between the notice of the proposed rulemaking and the final rule, there may well have been other dates the Commission could have chosen. But we can see no legal basis for concluding that some date other than October 14, 1993, would clearly have been preferable. Those like American who filed earlier, that is, those who gained the benefit of grandfathering, were on notice that they would be held to the eight-month construction period. They may nevertheless have speculated that the Commission would offer them the benefit of slow-growth, but the purpose of the Commission's line drawing was to deter speculation. If American believed a slow-growth time frame was necessary, it had only to withdraw its applications and refile them after the final rule issued, thereby losing grandfathering's guarantee of exclusivity but gaining the advantage of constructing its system over a three-year period.

At oral argument, the Commission conceded that American's petition for reconsideration and its petition for judicial review tolled the eight-month deadline. *Cf. Los Angeles SMSA Ltd. Partnership v. FCC*, 70 F.3d 1358, 1359–60 (D.C.Cir.1995). While we deny American's petition for review, we assume the Commission will honor its concession.

*So ordered.*