BENKELMAN TELEPHONE COMPANY, et al., Petitioners,

v.

FEDERAL COMMUNICATIONS COMMISSION and United States of America, Respondents.

Nationwide Paging, Inc., et al., Intervenors.

Metamora Telephone Company, Petitioner,

v.

Federal Communications Commission and United States of America, Respondents.

Advanced Paging, Inc, et al., Petitioners,

v.

Federal Communications Commission and United States of America, Respondents.

Advanced Paging, Inc., et al., Petitioners,

v.

Federal Communications Commission and United States of America, Respondents.

Robert L. Wagner, et al., Petitioners,

v.

Federal Communications Commission and United States of America, Respondents.

Personal Communications Industry Association, Petitioner,

v.

Federal Communications Commission and United States of America, Respondents.

Nos. 97–1245, 97–1294, 99–1247, 99–1251, 99–1331 & 99–1337.

United States Court of Appeals, District of Columbia Circuit.

Argued May 16, 2000.

Decided July 28, 2000.

---

Carl W. Northrop argued the cause for the petitioners and intervenors. Timothy E. Welch, Kenneth E. Hardman, John D. Pellegrin, Frederick M. Joyce, Kenneth D. Patrich and Robert L. Hoggarth were on brief. Ray M. Senkowski, Christine M.

Crowe and David A. Gross entered appearances.

Roberta L. Cook, Counsel, Federal Communications Commission, argued the cause for the respondents. Christopher J. Wright, General Counsel, John E. Ingle, Deputy Associate General Counsel, Federal Communications Commission, Joel I. Klein, Assistant Attorney General, United States Department of Justice, and Robert B. Nicholson and Andrea Limmer, Attorneys, United States Department of Justice, were on brief. Daniel M. Armstrong, Associate General Counsel, and Gregory M. Christopher, Counsel, Federal Communications Commission, entered appearances.

Before: WILLIAMS, SENTELLE and HENDERSON, Circuit Judges.

Opinion for the court filed by Circuit Judge HENDERSON.

KAREN LeCRAFT HENDERSON, Circuit Judge:

The petitioners challenge a Federal Communications Commission (FCC) rulemaking that established a geographic area licensing regime for common carrier paging and 929 MHz private carrier paging licenses[1] and a competitive bidding procedure for mutually exclusive[2] applications filed thereunder. *See In re Revision of Part 22 and Part 90 of the Comm'n's Rules to Facilitate Future Dev. of Paging Sys.*, Second Report and Order and Further Notice of Proposed Rulemaking, 12 F.C.C.R. 2732, 1997 WL 76133 (1997) (Second R&O); *In re Revision of Part 22 and Part 90 of the Comm'n's Rules to Facilitate Future Dev. of Paging Sys.*, Memorandum Opinion and Order on Reconsideration and Third Report and Order, 14 F.C.C.R. 10030, 1999 WL 325346 (1999)

(Third R&O). The petitioners and intervenors contend the FCC lacked statutory authority under 47 U.S.C. § 309(j) to auction the new geographic paging licenses, that the FCC arbitrarily failed to require that geographic licensees provide notice of construction to neighboring incumbent licensees and that the algorithm the FCC used to identify pending mutually exclusive applications violates the Paperwork Reduction Act of 1995 (PRA), 44 U.S.C. §§ 3501 *et seq.* For the reasons set out below we reject each of these arguments and deny the petitions for review.

## I.

Before 1996 the FCC allocated licenses for common carrier paging and exclusive private carrier paging service spectrum under the traditional site-specific licensing scheme which required a separate license for each paging transmitter site. Each license application proposed a transmission frequency and set out technical information on the proposed station, including its potential for electrical interference with adjacent stations. *See* 47 C.F.R. § 22.529 (1996); *id.* § 22.559. Once an applicant filed, the FCC reviewed each site-specific application preliminarily for formal compliance and issued public notice of acceptance of filing. *See id.* § 22.120. Generally, if an applicant's proposed service would overlap and interfere with an incumbent licensee's transmission, the application was denied. *See id.* § 22.537(a). When mutually exclusive site-specific applications were filed, a single applicant was selected by lottery. *See id.* § 22.131(c)(1).

In the challenged rulemaking the FCC replaced the site-specific licensing process with a scheme of geographic licenses. The

---

**1.** Common carrier paging licensees "gain[ ] the exclusive use of the licensed frequency within their protected service area." *PSWF Corp. v. FCC*, 108 F.3d 354, 355 (D.C.Cir. 1997). Private carrier paging licensees, on the other hand, "ha[ve] to share their allotted frequency with other such licensees operating in the same geographic area." *Id.*

**2.** Applications are considered "mutually exclusive" if only one can be granted because they seek the same license or different licenses that would interfere with each other. *See Lakeshore Broadcasting, Inc. v. FCC*, 199 F.3d 468, 470 (D.C.Cir.1999) (citing *Ashbacker Radio Corp. v. FCC*, 326 U.S. 327, 333, 66 S.Ct. 148, 90 L.Ed. 108 (1945)).

new scheme authorizes a licensee to operate a transmitter anywhere within the licensed geographic area without notice to the FCC of the transmitter's operation or of its precise location. The geographic licensee must, however, protect incumbent operators in the geographic area and adjacent areas from harmful electrical interference. In order to bid at a geographic license auction, an applicant must file an FCC Form 175 (Short Form) either identifying individual channels and markets it seeks or checking the "All" box, which allows it to bid on any or all of the channels and markets being auctioned. After filing the Short Form, but before the auction, an applicant must submit an "upfront" payment which "bear[s] a relation to the value of the licenses to be awarded." Second R&O, 12 F.C.C.R. at 2794. A successful bidder faces "automatic cancellation" of the license if it does not either (1) "provide coverage to one-third of the population within three years of the license grant, and to two-thirds of the population within five years of the license grant" or (2) "provide substantial service to the geographic license area within five years of license grant." *Id.* at 2765.

In contemplation of the new geographic system, the FCC imposed a filing freeze as of February 8, 1996. On February 19, 1997 the Commission released its Second Report and Order outlining the auction procedures for the new geographic licenses and authorizing the Wireless Telecommunications Bureau to dismiss all pending exclusive paging applications and to either grant or dismiss all pending non-mutually

exclusive paging applications. On June 24, 1999 the FCC issued its Third Report and Order affirming the geographic licensing scheme but somewhat modifying its procedures. On August 12, 1999 the FCC issued a public notice announcing the relevant auction procedures for the geographic paging licenses. *See Auction of 929 MHz Paging Serv. Spectrum,* Public Notice (1999). Applicants for the licenses filed their Short Forms on January 20, 2000 and deposited their upfront payments on February 7, 2000. On February 24, 2000 the FCC conducted the auction.

Six petitions for review of the FCC's rulemaking have been filed at various points in the proceedings and have been consolidated for consideration here.

## II.

The petitioners, consisting of incumbent paging licensees and a paging industry trade association (licensee petitioners)[3] and dismissed license applicants (applicant petitioners),[4] challenge the FCC's new geographic licensing scheme on three grounds. We address—and reject—each ground in turn.

### A. Statutory Authority for License Auctions

■ The petitioning trade association and incumbent licensees, joined by the intervenors,[5] challenge the FCC's authority under 47 U.S.C. § 309(j)(1) to require that existing licensees bid at auction when they seek to "modify" their present licenses. Section 309(j)(1) requires:

---

**3.** The incumbent licensees are Benkelman Telephone Co., Frederick W. Hiort dba B&B Beepers, Wauneta Telephone Co., Metamora Telephone Co., Advanced Paging, Inc., Mark A. Apsley dba Progressive Paging, Capitol Radio Telephone Co., Inc. dba Capitol Paging, Express Message Corp., A. V. Lauttamus Communications, Inc. and NEP, LLC dba Northeast Paging. The trade association is Personal Communications Industry Association. For convenience, these petitioners or any subgroup of them will be identified as "licensee petitioners."

**4.** These petitioners, whose applications, filed between November 15, 1995 and February 8, 1996, were dismissed without action because the FCC considered them mutually exclusive, are Robert L. Wagner, Melvia M. Woods, Robert Horn, John Piskor, Mohammed Siddiqui and Lenard Travis.

**5.** The intervenors include AirTouch Paging, Arch Communications Group, Inc., Metrocall, Inc., Nationwide Paging, Inc. and PowerPage, Inc.

If, consistent with the obligations described in paragraph (6)(E), mutually exclusive applications are accepted for any initial license or construction permit, then, except as provided in paragraph (2), the Commission shall grant the license or permit to a qualified applicant through a system of competitive bidding that meets the requirements of this subsection.

47 U.S.C. § 309(j)(1). Section 309(j)(6)(E), in turn, provides: "Nothing in this subsection, or in the use of competitive bidding, shall ... (E) be construed to relieve the Commission of the obligation in the public interest to continue to use engineering solutions, negotiation, threshold qualifications, service regulations, and other means in order to avoid mutual exclusivity in application and licensing proceedings; ...." *Id.* § 309(j)(6)(E). In determining the Commission's authority under this statute, "the court reviews the FCC's interpretation of the Communications Act under the now-familiar standard set forth in *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842–843, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), by which the court considers 'whether Congress has directly spoken to the precise question at issue,' *id.* at 842, 104 S.Ct. 2778, and if it has not, 'whether the agency's answer is based on a permissible construction of the statute.' *Id.* at 843, 104 S.Ct. 2778." *Community Television, Inc. v. FCC,* 216 F.3d 1133, 1137 (D.C.Cir.2000). We conclude that, while the cited statutory language is ambiguous, the Commission has reasonably construed it to authorize the challenged auctions.

■ The petitioners first argue modified licenses are not "initial" licenses for which section 309(j)(1) authorizes competitive bidding. In order for a license to be considered initial under section 309(j)(1), "a newly issued license must differ in some significant way from the license it displaces." *Fresno Mobile Radio, Inc. v. FCC,* 165 F.3d 965, 970 (D.C.Cir.1999). In *Fresno* we noted that "nothing in the text of [section 309(j)] forecloses [the FCC] from considering a license 'initial' if it is the first awarded for a particular frequency under a new licensing scheme, that is, one involving a different set of rights and obligations for the licensee." *Id.* The FCC reasonably treated the incumbent licensees' applications for modification under the new geographic system as applications for "initial" licenses under such a "new licensing scheme." The petitioners note that the two licensing schemes provide the same paging service on the same frequencies, basically provide fill-in sites and maintain the same licensee buildout requirements. Nevertheless, they themselves acknowledge, as they must, that the geographic license scheme has wrought "fundamental alterations to the paging industry's market structure and licensing schemes." Petitioners' Br. 30. Under the geographic scheme non-incumbents can compete for the available spectrum, however much remains, on equal footing with incumbents and successful applicants have far greater freedom in selecting transmitter locations; yet at the same time new licensees assume much more responsibility for researching site locations to protect incumbents from interference. Given the new scheme's "fundamental" alterations, we hold the FCC reasonably treated modification applications by incumbents as "initial" applications within the meaning of section 309(j)(1).

■ The petitioners also assert the FCC shirked its duty under section 309(j)(6)(E) to affirmatively avoid mutual exclusivity by adopting the new licensing scheme, which necessarily causes a high

rate of mutual exclusivity at certain frequencies, and by creating "phantom" or "artificial" mutual exclusivity through the "All" box option and the "substantial service" alternative. We reject this argument for substantially the same reason we rejected a similar argument raised in *DIRECTV v. FCC*, 110 F.3d 816, 827–28 (D.C.Cir.1997). In *DIRECTV* the petitioners contended that "the Commission lacked authority to adopt an auction rule under § 309(j) because it did not first make sufficient efforts, while still using the [previous] approach to the assignment of licenses, to avoid mutual exclusivity among their applications." *DIRECTV*, 110 F.3d at 828. We concluded, however:

> Once the Commission had abandoned [its previous] methodology—for sufficient reasons, as we have seen—it was faced with mutually exclusive applications. Nothing in § 309(j)(6)(E) requires the FCC to adhere to a policy it deems outmoded "in order to avoid mutual exclusivity in ... licensing proceedings"; rather, that provision instructs the agency, in order to avoid mutual exclusivity, to take certain steps, such as the use of an engineering solution, within the framework of existing policies.

*Id.* (quoting 47 U.S.C. § 309(j)(6)(E)). Similarly here, the FCC reasonably abandoned the site-specific system in favor of a geographic one, finding that "the public interest is better served by licensing all remaining paging spectrum through a geographic licensing scheme than by processing additional site-specific licenses," Third R&O, 14 F.C.C.R. at 10,043, while "it would not be in the public interest to implement other licensing schemes or other processes that avoid mutual exclusivity," *id.* at 10,042. The Commission further reasonably found that both the "All" box option and the substantial service al-

ternative were necessary to effectively implement the new scheme—the former to "give[ ] bidders the flexibility to pursue back-up strategies in the event they are unable to obtain their first choice of licenses" and the latter to encourage service to rural areas as required under section 309(j)(3). Third R&O, 14 F.C.C.R. at 10,-081–82. Having found the policy changes in the public interest, the Commission was authorized to implement them without regard to section 309(j)(6)(E) which imposes an obligation only to minimize mutual exclusivity "in the public interest," 47 U.S.C. § 309(j)(6)(E), and "within the framework of existing policies," *DIRECTV*, 110 F.3d at 828. Thus, the FCC's authority to adopt the new licensing scheme was not foreclosed by its section 309(j)(6)(E) obligation.[6]

### B. Notice to Incumbent Licensees

◼ Next, the licensee petitioners and two of the intervenors contend that geographic licensees should be required under the new system to provide advance notice of new construction to adjacent site-specific licensees, in order to warn them of potential interference, as they are required to do for adjacent geographic licensees. *See* Second R&O, 12 F.C.C.R. at 2765 App. A, § 22.503(h). Site-specific incumbent licensees, however, do not share geographic licensees' need for such warning because the existing rules furnish interference protection through requirements "that govern transmitter height and power, distance between transmission stations, the licensee's protected service area, and/or the field strength of the licensee's service and interfering signals." Second R&O, 12 F.C.C.R. at 2767.[7] Geographic licensees, by contrast, enjoy no similar protection from interference. Because of this distinction, we conclude the FCC reasonably accorded the two groups different treatment.

---

6. The petitioners also challenge the "substantial service" standard as too vague to permit the FCC to provide notice to licensees of license termination, as required under 5 U.S.C. § 558(c). We find adequate notice is provided, however, in the review procedure the FCC requires before automatic termi-

nation can occur. *See* Brief of Respondents at 28.

7. In addition, geographic licensees are required to provide construction information upon request. *See* 47 C.F.R. § 22.529(c).

## C. PRA

 Finally, the applicant petitioners and two intervenors claim that the algorithm the FCC used to determine their applications should be dismissed for mutually exclusivity is a "collection of information" for which OMB approval was not obtained as required by the PRA.[8] We disagree and hold that the algorithm is not a "collection of information" under the PRA.[9] The PRA defines "collection of information" as "obtaining, causing to be obtained, soliciting, or requiring the disclosure to third parties or the public, of facts or opinions by or for an agency." 44 U.S.C. § 3502(3)(A). To come within this definition the algorithm must impose a "reporting requirement" on applicants. *See Saco River Cellular, Inc. v. FCC*, 133 F.3d 25, 33 (D.C.Cir.1998). It does not. The algorithm simply blocks applications that meet specific criteria for mutual exclusivity. It is true, as the petitioners assert, that "if an applicant is to ensure its basic acceptability," it must research in advance whether or not the license it seeks meets the algorithm's criteria, Reply Brief at 24, but the FCC does not *require* such research or that its results be *reported*.[10]

For the foregoing reasons, the petitions for review are

*Denied.*

---

8. PRA section 3507(a) provides that "[a]n agency shall not conduct or sponsor the collection of information unless in advance of the adoption or revision of the collection of information ... the agency has" submitted the proposed collection of information to the OMB Director, "the [OMB] Director has approved the proposed collection of information ...; and ... the agency has obtained from the [OMB] Director a control number to be displayed upon the collection of information." 44 U.S.C. § 3507(a).

9. The FCC contests our jurisdiction over the claims of those applicant petitioners who did not file a petition for reconsideration of the FCC's dismissal of their applications. *See* 47 U.S.C. § 155(c)(7). The FCC concedes, however, that the court has jurisdiction over at least one of the petitions. *See* Brief of Respondents at 32. The PRA issue is therefore squarely before the court.

10. The petitioners' alternative argument that the algorithm violates the Administrative Procedure Act, 5 U.S.C. § 553, because promulgated without public notice and comment is waived because the argument was raised for the first time in the petitioners' reply brief. *See Grant v. United States Air Force*, 197 F.3d 539, 543 (D.C.Cir.1999) ("[A]n argument first made in a reply brief comes too late.") (citing *Fraternal Order of Police v. United States*, 173 F.3d 898, 902–03 (D.C.Cir.1999)).