United States Court of Appeals

 FOR THE DISTRICT OF COLUMBIA CIRCUIT

 Argued May 16, 2000 Decided July 28, 2000 

 No. 97-1245

 Benkelman Telephone Company, et al., 
 Petitioners

 v.

 Federal Communications Commission and 
 United States of America, 
 Respondents

 Nationwide Paging, Inc., et al., 
 Intervenors

 

 

 

 

 No. 97-1294

 Metamora Telephone Company, 
 Petitioner

 v.

 Federal Communications Commission and 
 United States of America, 
 Respondents

 No. 99-1247

 Advanced Paging, Inc, et al., 
 Petitioners

 v.

 Federal Communications Commission and 
 United States of America, 
 Respondents

 No. 99-1251

 Advanced Paging, Inc., et al., 
 Petitioners

 v.

 Federal Communications Commission and 
 United States of America, 
 Respondents

 No. 99-1331

 Robert L. Wagner, et al., 
 Petitioners

 v.

 Federal Communications Commission and 
 United States of America, 
 Respondents

 No. 99-1337

 Personal Communications Industry Association, 
 Petitioner

 v.

 Federal Communications Commission and 
 United States of America, 
 Respondents

 On Petitions for Review of Orders of the 
 Federal Communications Commission

 Carl W. Northrop argued the cause for the petitioners and 
intervenors. Timothy E. Welch, Kenneth E. Hardman, John 
D. Pellegrin, Frederick M. Joyce, Kenneth D. Patrich and 
Robert L. Hoggarth were on brief. Ray M. Senkowski, Chris-
tine M. Crowe and David A. Gross entered appearances.

 Roberta L. Cook, Counsel, Federal Communications Com-
mission, argued the cause for the respondents. Christopher J. 
Wright, General Counsel, John E. Ingle, Deputy Associate 
General Counsel, Federal Communications Commission, Joel 

I. Klein, Assistant Attorney General, United States Depart-
ment of Justice, and Robert B. Nicholson and Andrea Lim-
mer, Attorneys, United States Department of Justice, were 
on brief. Daniel M. Armstrong, Associate General Counsel, 
and Gregory M. Christopher, Counsel, Federal Communica-
tions Commission, entered appearances.

 Before: Williams, Sentelle and Henderson, Circuit 
Judges.

 Opinion for the court filed by Circuit Judge Henderson.

 Karen LeCraft Henderson, Circuit Judge: The petitioners 
challenge a Federal Communications Commission (FCC) rule-
making that established a geographic area licensing regime 
for common carrier paging and 929 MHz private carrier 
paging licenses1 and a competitive bidding procedure for 
mutually exclusive2 applications filed thereunder. See In re 
Revision of Part 22 and Part 90 of the Comm'n's Rules to 
Facilitate Future Dev. of Paging Sys., Second Report and 
Order and Further Notice of Proposed Rulemaking, 12 
F.C.C.R. 2732 (1997) (Second R&O); In re Revision of Part 
22 and Part 90 of the Comm'n's Rules to Facilitate Future 
Dev. of Paging Sys., Memorandum Opinion and Order on 
Reconsideration and Third Report and Order, 14 F.C.C.R. 
10,030 (1999) (Third R&O). The petitioners and intervenors 
contend the FCC lacked statutory authority under 47 U.S.C. 
s 309(j) to auction the new geographic paging licenses, that 
the FCC arbitrarily failed to require that geographic licen-
sees provide notice of construction to neighboring incumbent 

__________
 1 Common carrier paging licensees "gain[ ] the exclusive use of 
the licensed frequency within their protected service area." PSWF 
Corp. v. FCC, 108 F.3d 354, 355 (D.C. Cir. 1997). Private carrier 
paging licensees, on the other hand, "ha[ve] to share their allotted 
frequency with other such licensees operating in the same geo-
graphic area." Id.

 2 Applications are considered "mutually exclusive" if only one can 
be granted because they seek the same license or different licenses 
that would interfere with each other. See Lakeshore Broadcasting, 
Inc. v. FCC, 199 F.3d 468, 470 (D.C. Cir. 1999) (citing Ashbacker 
Radio Corp. v. FCC, 326 U.S. 327, 333 (1945)).

licensees and that the algorithm the FCC used to identify 
pending mutually exclusive applications violates the Paper-
work Reduction Act of 1995 (PRA), 44 U.S.C. ss 3501 et seq. 
For the reasons set out below we reject each of these 
arguments and deny the petitions for review.

 I.

 Before 1996 the FCC allocated licenses for common carrier 
paging and exclusive private carrier paging service spectrum 
under the traditional site-specific licensing scheme which 
required a separate license for each paging transmitter site. 
Each license application proposed a transmission frequency 
and set out technical information on the proposed station, 
including its potential for electrical interference with adjacent 
stations. See 47 C.F.R. s 22.529 (1996); id. s 22.559. Once 
an applicant filed, the FCC reviewed each site-specific appli-
cation preliminarily for formal compliance and issued public 
notice of acceptance of filing. See id. s 22.120. Generally, if 
an applicant's proposed service would overlap and interfere 
with an incumbent licensee's transmission, the application was 
denied. See id. s 22.537(a). When mutually exclusive site-
specific applications were filed, a single applicant was selected 
by lottery. See id. s 22.131(c)(1).

 In the challenged rulemaking the FCC replaced the site-
specific licensing process with a scheme of geographic licens-
es. The new scheme authorizes a licensee to operate a 
transmitter anywhere within the licensed geographic area 
without notice to the FCC of the transmitter's operation or of 
its precise location. The geographic licensee must, however, 
protect incumbent operators in the geographic area and 
adjacent areas from harmful electrical interference. In order 
to bid at a geographic license auction, an applicant must file 
an FCC Form 175 (Short Form) either identifying individual 
channels and markets it seeks or checking the "All" box, 
which allows it to bid on any or all of the channels and 
markets being auctioned. After filing the Short Form, but 
before the auction, an applicant must submit an "upfront" 
payment which "bear[s] a relation to the value of the licenses 

to be awarded." Second R&O, 12 F.C.C.R. at 2794. A 
successful bidder faces "automatic cancellation" of the license 
if it does not either (1) "provide coverage to one-third of the 
population within three years of the license grant, and to two-
thirds of the population within five years of the license grant" 
or (2) "provide substantial service to the geographic license 
area within five years of license grant." Id. at 2765.

 In contemplation of the new geographic system, the FCC 
imposed a filing freeze as of February 8, 1996. On February 
19, 1997 the Commission released its Second Report and 
Order outlining the auction procedures for the new geograph-
ic licenses and authorizing the Wireless Telecommunications 
Bureau to dismiss all pending exclusive paging applications 
and to either grant or dismiss all pending non-mutually 
exclusive paging applications. On June 24, 1999 the FCC 
issued its Third Report and Order affirming the geographic 
licensing scheme but somewhat modifying its procedures. On 
August 12, 1999 the FCC issued a public notice announcing 
the relevant auction procedures for the geographic paging 
licenses. See Auction of 929 MHz Paging Serv. Spectrum, 
Public Notice (1999). Applicants for the licenses filed their 
Short Forms on January 20, 2000 and deposited their upfront 
payments on February 7, 2000. On February 24, 2000 the 
FCC conducted the auction.

 Six petitions for review of the FCC's rulemaking have been 
filed at various points in the proceedings and have been 
consolidated for consideration here.

 II.

 The petitioners, consisting of incumbent paging licensees 
and a paging industry trade association (licensee petitioners)3 

__________
 3 The incumbent licensees are Benkelman Telephone Co., Freder-
ick W. Hiort dba B&B Beepers, Wauneta Telephone Co., Metamora 
Telephone Co., Advanced Paging, Inc., Mark A. Apsley dba Pro-
gressive Paging, Capitol Radiotelephone Co., Inc. dba Capitol Pag-
ing, Express Message Corp., A. V. Lauttamus Communications, Inc. 
and NEP, LLC dba Northeast Paging. The trade association is 
Personal Communications Industry Association. For convenience, 

and dismissed license applicants (applicant petitioners),4 chal-
lenge the FCC's new geographic licensing scheme on three 
grounds. We address--and reject--each ground in turn.

 A. Statutory Authority for License Auctions

 The petitioning trade association and incumbent licensees, 
joined by the intervenors,5 challenge the FCC's authority 
under 47 U.S.C. s 309(j)(1) to require that existing licensees 
bid at auction when they seek to "modify" their present 
licenses. Section 309(j)(1) requires:

 If, consistent with the obligations described in paragraph 
 (6)(E), mutually exclusive applications are accepted for 
 any initial license or construction permit, then, except as 
 provided in paragraph (2), the Commission shall grant 
 the license or permit to a qualified applicant through a 
 system of competitive bidding that meets the require-
 ments of this subsection.
 
47 U.S.C. s 309(j)(1). Section 309(j)(6)(E), in turn, provides: 
"Nothing in this subsection, or in the use of competitive 
bidding, shall ... (E) be construed to relieve the Commission 
of the obligation in the public interest to continue to use 
engineering solutions, negotiation, threshold qualifications, 
service regulations, and other means in order to avoid mutual 
exclusivity in application and licensing proceedings;...." Id. 
s 309(j)(6)(E). In determining the Commission's authority 
under this statute, "the court reviews the FCC's interpreta-
tion of the Communications Act under the now-familiar stan-

__________
these petitioners or any subgroup of them will be identified as 
"licensee petitioners."

 4 These petitioners, whose applications, filed between November 
15, 1995 and February 8, 1996, were dismissed without action 
because the FCC considered them mutually exclusive, are Robert 
L. Wagner, Melvia M. Woods, Robert Horn, John Piskor, Mo-
hammed Siddiqui and Lenard Travis.

 5 The intervenors include AirTouch Paging, Arch Communications 
Group, Inc., Metrocall, Inc., Nationwide Paging, Inc. and Power-
Page, Inc.

dard set forth in Chevron U.S.A. Inc. v. Natural Resources 
Defense Council, Inc., 467 U.S. 837, 842-843, 104 S.Ct. 2778, 
81 L.Ed.2d 694 (1984), by which the court considers 'whether 
Congress has directly spoken to the precise question at issue,' 
id. at 842, and if it has not, 'whether the agency's answer is 
based on a permissible construction of the statute.' Id. at 
843." Community Television, Inc. v. FCC, Nos. 98-1106 et 
al., slip op. at 5 (D.C. Cir. 2000). We conclude that, while the 
cited statutory language is ambiguous, the Commission has 
reasonably construed it to authorize the challenged auctions.

 The petitioners first argue modified licenses are not "ini-
tial" licenses for which section 309(j)(1) authorizes competitive 
bidding. In order for a license to be considered initial under 
section 309(j)(1), "a newly issued license must differ in some 
significant way from the license it displaces." Fresno Mobile 
Radio, Inc. v. FCC, 165 F.3d 965, 970 (D.C. Cir. 1999). In 
Fresno we noted that "nothing in the text of [section 309(j)] 
forecloses [the FCC] from considering a license 'initial' if it is 
the first awarded for a particular frequency under a new 
licensing scheme, that is, one involving a different set of 
rights and obligations for the licensee." Id. The FCC 
reasonably treated the incumbent licensees' applications for 
modification under the new geographic system as applications 
for "initial" licenses under such a "new licensing scheme." 
The petitioners note that the two licensing schemes 
provide the same paging service on the same frequencies, 
basically provide fill-in sites and maintain the same licensee buildout 
requirements. Nevertheless, they themselves acknowledge, 
as they must, that the geographic license scheme has wrought 
34fundamental alterations to the paging industry's market
structure and licensing schemes.34 Petitioners' Br. 30. Under
the geographic scheme non-incumbents can compete for the 
available spectrum, however much remains, on equal footing 
with incumbents and successful applicants have far greater 
freedom in selecting transmitter locations; yet at the same time 
new licensees assume much more responsibility for researching site
locations to protect incumbents from interference. Given the new 
scheme's 34fundamental34 alterations, we hold the FCC reasonably
treated modification applications by incumbents as 34initial34 
applications within the meaning of section 309(j)(1).

 The petitioners also assert the FCC shirked its duty under 
section 309(j)(6)(E) to affirmatively avoid mutual exclusivity 
by adopting the new licensing scheme, which necessarily 
causes a high rate of mutual exclusivity at certain frequen-
cies, and by creating "phantom" or "artificial" mutual exclu-
sivity through the "All" box option and the "substantial 
service" alternative. We reject this argument for substantial-
ly the same reason we rejected a similar argument raised in 
DIRECTV v. FCC, 110 F.3d 816, 827-28 (D.C. Cir. 1997). In 
DIRECTV the petitioners contended that "the Commission 
lacked authority to adopt an auction rule under s 309(j) 
because it did not first make sufficient efforts, while still 
using the [previous] approach to the assignment of licenses, to 
avoid mutual exclusivity among their applications." 
DIRECTV, 110 F.3d at 828. We concluded, however:

 Once the Commission had abandoned [its previous] meth-
 odology--for sufficient reasons, as we have seen--it was 
 faced with mutually exclusive applications. Nothing in 
 s 309(j)(6)(E) requires the FCC to adhere to a policy it 
 deems outmoded "in order to avoid mutual exclusivity in 
 ... licensing proceedings"; rather, that provision in-
 structs the agency, in order to avoid mutual exclusivity, 
 to take certain steps, such as the use of an engineering 
 solution, within the framework of existing policies.
 
Id. (quoting 47 U.S.C. s 309(j)(6)(E)). Similarly here, the 
FCC reasonably abandoned the site-specific system in favor 
of a geographic one, finding that "the public interest is better 
served by licensing all remaining paging spectrum through a 
geographic licensing scheme than by processing additional 
site-specific licenses," Third R&O, 14 F.C.C.R. at 10,043, 

while "it would not be in the public interest to implement 
other licensing schemes or other processes that avoid mutual 
exclusivity," id at 10,042. The Commission further reason-
ably found that both the "All" box option and the substantial 
service alternative were necessary to effectively implement 
the new scheme--the former to "give[ ] bidders the flexibility 
to pursue back-up strategies in the event they are unable to 
obtain their first choice of licenses" and the latter to encour-
age service to rural areas as required under section 309(j)(3). 
Third R&O, 14 F.C.C.R. at 10,081-82. Having found the 
policy changes in the public interest, the Commission was 
authorized to implement them without regard to section 
309(j)(6)(E) which imposes an obligation only to minimize 
mutual exclusivity "in the public interest," 47 U.S.C. 
s 309(j)(6)(E), and "within the framework of existing poli-
cies," DIRECTV, 110 F.3d at 828. Thus, the FCC's authority 
to adopt the new licensing scheme was not foreclosed by its 
section 309(j)(6)(E) obligation.6

 B. Notice to Incumbent Licensees

 Next, the licensee petitioners and two of the intervenors 
contend that geographic licensees should be required under 
the new system to provide advance notice of new construction 
to adjacent site-specific licensees, in order to warn them of 
potential interference, as they are required to do for adjacent 
geographic licensees. See Second R&O, 12 F.C.C.R. at 2765 
App. A, s 22.503(h). Site-specific incumbent licensees, how-
ever, do not share geographic licensees' need for such warn-
ing because the existing rules furnish interference protection 
through requirements "that govern transmitter height and 
power, distance between transmission stations, the licensee's 
protected service area, and/or the field strength of the licen-
see's service and interfering signals." Second R&O, 12 

__________
 6 The petitioners also challenge the "substantial service" standard 
as too vague to permit the FCC to provide notice to licensees of 
license termination, as required under 5 U.S.C. s 558(c). We find 
adequate notice is provided, however, in the review procedure the 
FCC requires before automatic termination can occur. See Brief of 
Respondents at 28.

F.C.C.R. at 2767.7 Geographic licensees, by contrast, enjoy no 
similar protection from interference. Because of this distinc-
tion, we conclude the FCC reasonably accorded the two 
groups different treatment.

 C. PRA

 Finally, the applicant petitioners and two intervenors claim 
that the algorithm the FCC used to determine their applica-
tions should be dismissed for mutually exclusivity is a "collec-
tion of information" for which OMB approval was not ob-
tained as required by the PRA.8 We disagree and hold that 
the algorithm is not a "collection of information" under the 
PRA.9 The PRA defines "collection of information" as "ob-
taining, causing to be obtained, soliciting, or requiring the 
disclosure to third parties or the public, of facts or opinions 
by or for an agency." 44 U.S.C. s 3502(3)(A). To come 
within this definition the algorithm must impose a "reporting 
requirement" on applicants. See Saco River Cellular, Inc. v. 
FCC, 133 F.3d 25, 33 (D.C. Cir. 1998). It does not. The 
algorithm simply blocks applications that meet specific crite-
ria for mutual exclusivity. It is true, as the petitioners 
assert, that "if an applicant is to ensure its basic acceptabili-

__________
 7 In addition, geographic licensees are required to provide con-
struction information upon request. See 47 C.F.R. s 22.529(c).

 8 PRA section 3507(a) provides that "[a]n agency shall not con-
duct or sponsor the collection of information unless in advance of 
the adoption or revision of the collection of information ... the 
agency has" submitted the proposed collection of information to the 
OMB Director, "the [OMB] Director has approved the proposed 
collection of information ...; and ... the agency has obtained from 
the [OMB] Director a control number to be displayed upon the 
collection of information." 44 U.S.C. s 3507(a).

 9 The FCC contests our jurisdiction over the claims of those 
applicant petitioners who did not file a petition for reconsideration 
of the FCC's dismissal of their applications. See 47 U.S.C. 
s 155(c)(7). The FCC concedes, however, that the court has juris-
diction over at least one of the petitions. See Brief of Respondents 
at 32. The PRA issue is therefore squarely before the court.

ty," it must research in advance whether or not the license it 
seeks meets the algorithm's criteria, Reply Brief at 24, but 
the FCC does not require such research or that its results be 
reported.10

 For the foregoing reasons, the petitions for review are

 Denied.

__________
 10 The petitioners' alternative argument that the algorithm vio-
lates the Administrative Procedure Act, 5 U.S.C. s 553, because 
promulgated without public notice and comment is waived because 
the argument was raised for the first time in the petitioners' reply 
brief. See Grant v. United States Air Force, 197 F.3d 539, 543 
(D.C. Cir. 1999) ("[A]n argument first made in a reply brief comes 
too late.") (citing Fraternal Order of Police v. United States, 173 
F.3d 898, 902-03 (D.C. Cir. 1999)).